SALTER, J.
Miguel Rodriguez appeals the denial of his motion to suppress evidence obtained by law enforcement officers and introduced by the state to prove his involvement in a so-called “grow house” operation, underlying a charge of trafficking in cannabis. The issue for our consideration on the record before us is whether the “inevitable discovery” exception to the exclusionary rule requires that the police be in the actual process of seeking a warrant when a warrantless, non-consensual search occurs. We affirm the trial court’s conclusions that probable cause existed, and substantial investigative measures were already well underway, before the time of the search, such that the inevitable discovery doctrine was correctly applied and the motion to suppress was properly denied.

Facts

Several bail bondsmen were attempting to locate one of their clients. The client, who had been charged with marijuana cultivation in a different house, had listed the address of Mr. Rodriguez’s home on his application for the bond. When the bondsmen knocked on the front door of that home, Mr. Rodriguez answered. He told the bondsmen that he did not know their client and that he was alone in the home. The bondsmen requested permission to search the home to be certain their client was not hiding there, and Mr. Rodriguez consented.[1] The bondsmen noticed a smell of marijuana in the home.
Encountering a locked bedroom door, the bondsmen asked Mr. Rodriguez to open it so they could confirm that their client was not hiding- there. Mr. Rodriguez unlocked the door and told the bondsmen that he was growing marijuana in the room.[2] At that point, one of the bondsmen in the group moved outside and called the police to report what the bondsmen had observed.
About thirty minutes later, a uniformed officer arrived at the home. The officer testified that Mr. Rodriguez invited him to enter. The officer saw the grow room, called the narcotics squad, and placed Mr. Rodriguez in handcuffs in the back of the officer’s squad car while they waited for the narcotics detectives to arrive. The bondsmen remained at that location throughout, and spoke to the lead detective when the narcotics unit arrived.
The lead detective testified that Mr. Rodriguez signed a form consenting to a search of the home. Mr. Rodriguez testified that he only signed the consent forms because the narcotics detectives had guns and most were also wearing masks. After their search confirmed the presence of a “grow room” containing six-foot marijuana plants, lights, and 36 pounds of marijuana, the detectives arrested Mr. Rodriguez.
*1137 The defense filed a motion to suppress. At the hearing on that motion, the circuit court heard testimony from the lead bondsman, the police officer who first responded to the call from the bondsmen, the lead narcotics unit detective, and Mr. Rodriguez. The state did not establish that the police officer or any detective had made any efforts to obtain a search warrant before law enforcement entered the home or Mr. Rodriguez was arrested. The lead detective did, however, testify that he would have sought a warrant if Mr. Rodriguez had not consented to the search.
The court denied the motion to suppress, although the court found that Mr. Rodriguez’s consent to entry by the police and detectives, and his signature on the consent form, were coerced. The court concluded that the inevitable discovery doctrine applied because probable cause had been established before law enforcement requested consent, and:
Soon as the bail bondsman calls and says, Listen I’m looking at a hydroponics lab to me that’s a trigger. If they had not gotten consent they would have gone and gotten a warrant.
Following the denial of the motion to suppress, Mr. Rodriguez entered a guilty plea and reserved the right to appeal the suppression issue. He was adjudicated guilty and sentenced, and this appeal followed.

Analysis

Mr. Rodriguez relies on King v. State, 79 So.3d 236 (Fla. 1st DCA 2012), and McDonnell v. State, 981 So.2d 585 (Fla. 1st DCA 2008), for the proposition that the inevitable discovery doctrine applies to a warrantless search in this context only if probable cause has been established and officers are in the process of obtaining a warrant when the search occurs. The majority opinion in McDonnell surveyed a number of federal cases, including United States v. Virden, 488 F.3d 1317 (11th Cir.2007), and United States v. Reilly, 224 F.3d 986 (9th Cir.2000), before concluding:
Thus, federal law suggests that the inevitable discovery doctrine will not be applied in every case where the police had probable cause for a warrant, but failed to get one. The cases focus on whether the police made an effort to get a warrant prior to the illegal search and whether strong probable cause existed for the search warrant.
McDonnell, 981 So.2d at 593.
In McDonnell, the trial court specifically found that the police investigator was in the process of obtaining a warrant at the time of the search, and that a warrant would have been issued based on probable cause. Based on those findings, the district court found that the inevitable discovery doctrine was correctly applied. In King, however, the state presented no evidence that there had been any effort to get a warrant, and the district court found that the inevitable discovery doctrine was inapplicable.
Another district court has also cited Vir-den and McDonnell in reversing the denial of a suppression motion and declining to apply the inevitable discovery doctrine, where the record included “absolutely no showing that efforts to obtain a warrant were being actively pursued prior to the occurrence of the illegal conducts the war-rantless search of an apartment].” Rowell v. State, 83 So.3d 990, 996 (Fla. 4th DCA 2012).
It is far from settled, however, that the “in the process of obtaining a warrant,” requirement argued here is an indispensable element of the inevitable discovery doctrine in such cases. The United States Court of Appeals, Seventh Circuit, has expressly rejected Virden’s requirement that a warrant is being “actively pursued” be *1138 fore the inevitable discovery doctrine will be applied to a warrantless search. United States v. Are, 590 F.3d 499 (7th Cir.2009); United States v. Tejada, 524 F.3d 809 (7th Cir.2008). That Court approves the inevitable discovery doctrine in such cases upon a showing that “a warrant would certainly, and not merely probably, have been issued had it been applied for.” Tejada, 524 F.3d at 813.
Similarly, the United States Court of Appeals, Tenth Circuit, has determined that the doctrine should be applied when a court has “a high level of confidence that the warrant in fact would have been issued and that the specific evidence in question would have been obtained by lawful means.” United States v. Cunningham, 413 F.3d 1199, 1203 (10th Cir.2005) (quoting United States v. Souza, 223 F.3d 1197, 1205 (10th Cir.2000)). The United States Court of Appeals, Fourth Circuit, has also declined to require proof of active efforts to obtain a warrant before the illegal search, provided the police prove that independent evidence available at the time of the search would have been sufficient for the issuance of a warrant. United States v. Allen, 159 F.3d 832 (4th Cir.1998).
The Supreme Court of Florida has also provided guidance regarding the inevitable discovery exception to the exclusionary rule. Relying on the United States Supreme Court’s explanation of the exception in Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), the Supreme Court of Florida has held that that the inevitable discovery doctrine will apply if the State demonstrates “that at the time of the constitutional violation an investigation was already underway.” Moody v. State, 842 So.2d 754, 759 (Fla.2003) (quoting Nix, 467 U.S. at 457, 104 S.Ct. 2501). “In other words, the case must be in such a posture that the facts already in the possession of the police would have led to this evidence notwithstanding the police conduct.” Fitzpatrick v. State, 900 So.2d 495, 515 (Fla.2005). The Supreme Court of Florida has not imposed a more specific requirement that law enforcement must also be in the process of applying for a warrant in such a case.
In the case at hand, Mr. Rodriguez has candidly and properly acknowledged that the independent evidence available from the bondsmen regarding the locked grow room, the lights, and actual marijuana plants, coupled with the pre-search smell of marijuana (from outside the front door) described by both a bondsman and the first officer to respond, established probable cause for the issuance of a search warrant before any law enforcement officer requested consent. Irrespective of the later judicial determination that Mr. Rodriguez’s alleged verbal consent to search and his signed consent form were non-consensual, it seems illogical for the police to have initiated the warrant process when Mr. Rodriguez had already allowed the bondsmen to enter and observe the illegal operation, and when he then signed the consent form. The independent facts provided by the bondsmen before Mr. Rodriguez was requested to consent to a search by law enforcement officers (a) triggered the investigation by the police and (b) assured that the police ultimately would have obtained the inculpatory marijuana, lights, and other grow room materials.
The trial court correctly evaluated these facts, applied the inevitable discovery doctrine as articulated in Nix, Moody, and Fitzpatrick, and denied the motion to suppress.
Affirmed.

. Mr. Rodriguez testified that he had not given the bondsmen permission to enter his house, that they told him he would have a problem if he did not allow a search because their client was a fugitive, and that they went inside the house without Mr. Rodriguez’s permission.

. Mr. Rodriguez testified that he opened the locked bedroom door because the bondsmen told him he "would have a problem" if their client was hiding in that room.