# Supreme Court of Florida

_____

No. SC14-160
_____

**MIGUEL RODRIGUEZ,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

[December 10, 2015]

PERRY, J.

Miguel Rodriguez seeks review of the decision of the Third District Court of Appeal in Rodriguez v. State, 129 So. 3d 1135 (Fla. 3d DCA 2013), on the ground that it expressly and directly conflicts with decisions of this Court and the district courts of appeal on the application of the inevitable discovery doctrine. See Fitzpatrick v. State, 900 So. 2d 495 (Fla. 2005); Moody v. State, 842 So. 2d 754 (Fla. 2003); Jeffries v. State, 797 So. 2d 573 (Fla. 2001); Maulden v. State, 617 So. 2d 298 (Fla. 1993). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. Because we find that the Third District improperly applied the inevitable discovery doctrine to the facts of this case, we quash the decision below.

## STATEMENT OF THE CASE AND FACTS

The facts of this case were presented below:

Several bail bondsmen were attempting to locate one of their clients. The client, who had been charged with marijuana cultivation in a different house, had listed the address of Mr. Rodriguez's home on his application for the bond. When the bondsmen knocked on the front door of that home, Mr. Rodriguez answered. He told the bondsmen that he did not know their client and that he was alone in the home. The bondsmen requested permission to search the home to be certain their client was not hiding there, and Mr. Rodriguez consented. The bondsmen noticed a smell of marijuana in the home.

Encountering a locked bedroom door, the bondsmen asked Mr. Rodriguez to open it so they could confirm that their client was not hiding there. Mr. Rodriguez unlocked the door and told the bondsmen that he was growing marijuana in the room. At that point, one of the bondsmen in the group moved outside and called the police to report what the bondsmen had observed.

About thirty minutes later, a uniformed officer arrived at the home. The officer testified that Mr. Rodriguez invited him to enter. The officer saw the grow room, called the narcotics squad, and placed Mr. Rodriguez in handcuffs in the back of the officer's squad car while they waited for the narcotics detectives to arrive. The bondsmen remained at that location throughout, and spoke to the lead detective when the narcotics unit arrived.

The lead detective testified that Mr. Rodriguez signed a form consenting to a search of the home. Mr. Rodriguez testified that he only signed the consent forms because the narcotics detectives had guns and most were also wearing masks. After their search confirmed the presence of a "grow room" containing six-foot marijuana plants, lights, and 36 pounds of marijuana, the detectives arrested Mr. Rodriguez.

The defense filed a motion to suppress. At the hearing on that motion, the circuit court heard testimony from the lead bondsman, the police officer who first responded to the call from the bondsmen, the lead narcotics unit detective, and Mr. Rodriguez. The state did not establish that the police officer or any detective had made any efforts to obtain a search warrant before law enforcement entered the home or Mr. Rodriguez was arrested. The lead detective did, however,

testify that he would have sought a warrant if Mr. Rodriguez had not consented to the search.

The court denied the motion to suppress, although the court found that Mr. Rodriguez's consent to entry by the police and detectives, and his signature on the consent form, were coerced. The court concluded that the inevitable discovery doctrine applied because probable cause had been established before law enforcement requested consent, and:

> Soon as the bail bondsman calls and says, Listen I'm looking at a hydroponics lab to me that's a trigger. If they had not gotten consent they would have gone and gotten a warrant.

> Following the denial of the motion to suppress, Mr. Rodriguez entered a guilty plea and reserved the right to appeal the suppression issue. He was adjudicated guilty and sentenced, and [then appealed to the Third District Court of Appeal].

Rodriguez, 129 So. 3d at 1136-37 (footnotes omitted). Based on these facts, the Third District found that the trial court properly applied the inevitable discovery doctrine. Id. at 1138. On appeal, Rodriguez argues that because law enforcement was not conducting a separate ongoing investigation, and the officers were not in the process of obtaining a warrant when the illegal conduct occurred, the lower courts improperly relied on the inevitable discovery doctrine. We agree. From the totality of the evidence, we find that the application of the inevitable discovery doctrine was improper and hold that the trial court should have suppressed the evidence obtained from the illegal search.

## DISCUSSION

### Standard of Review

- 3 -

"A trial court's ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness and the court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court's ruling." Terry v. State, 668 So. 2d 954, 958 (Fla. 1996). Accordingly, "the appellate courts defer to the trial court's factual findings so long as the findings are supported by competent, substantial evidence, and review de novo the legal question of whether there was probable cause given the totality of the factual circumstances." State v. Hankerson, 65 So. 3d 502, 506 (Fla. 2011).

**Merits**

The Fourth Amendment prohibits unreasonable searches and seizures. Searches or seizures executed without prior approval by a judge or magistrate are "per se unreasonable." Katz v. United States, 389 U.S. 347, 357 (1967). "[T]he warrant requirement is an important working part of our machinery of government, not merely an inconvenience to be somehow weighed against the claims of police efficiency." Riley v. California, 134 S. Ct. 2473, 2493 (2014) (internal quotation marks omitted). Further, the exclusionary rule makes evidence obtained either during or as a direct result of an unlawful invasion inadmissible. See United States v. Wade, 388 U.S. 218 (1967); Murphy v. Waterfront Comm'n of N.Y. Harbor, 378 U.S. 52 (1964); Wong Sun v. United States, 371 U.S. 471 (1963); Silverthorne

Lumber Co., Inc. v. United States, 251 U.S. 385 (1920). The purpose of the exclusionary rule is to sufficiently deter deliberate police misconduct. See Herring v. United States, 555 U.S. 135, 144 (2009). We recognize three exceptions to the exclusionary rule: "(1) an independent source existed for the discovery of the evidence; or, (2) the evidence would have inevitably been discovered in the course of a legitimate investigation; or (3) sufficient attenuation existed between the challenged evidence and the illegal conduct." Moody, 842 So. 2d at 759 (citations omitted).

Of particular concern here is the inevitable discovery doctrine, which applies to balance the need to deter police misconduct with the societal cost of allowing obviously guilty persons to go free. Nix v. Williams, 467 U.S. 431, 443 (1984). The inevitable discovery doctrine was first adopted by the United States Supreme Court in Nix and has long been recognized by this Court. See, e.g., Mansfield v. State, 911 So. 2d 1160 (Fla. 2005); Fitzpatrick, 900 So. 2d 495; Moody, 842 So. 2d 754; Craig v. State, 510 So. 2d 857 (Fla. 1987).

> Under this exception, "evidence obtained as the result of unconstitutional police procedure may still be admissible provided the evidence would ultimately have been discovered by legal means." Maulden[, 617 So. 2d at 301]. In adopting the inevitable discovery doctrine, the Supreme Court explained, "Exclusion of physical evidence that would inevitably have been discovered adds nothing to either the integrity or fairness of a criminal trial." Nix, 467 U.S. at 446. In making a case for inevitable discovery, the State must demonstrate "that at the time of the constitutional violation an investigation was already under way." Moody[, 842 So. 2d at 759

(quoting <u>Nix</u>, 467 U.S. 431 (Stevens, J., concurring in the judgment))]; <u>see also</u> <u>Jeffries v. State</u>, 797 So. 2d 573, 578 (Fla. 2001); <u>Maulden</u>, 617 So. 2d at 301.  In other words, the case must be in such a posture that the facts already in the possession of the police would have led to this evidence notwithstanding the police misconduct.  <u>See</u> <u>Moody</u>, 842 So. 2d at 759.

<u>Fitzpatrick</u>, 900 So. 2d at 514.

Inevitability under this rule "involves no speculative elements" and essentially requires the State to show " 'that at the time of the constitutional violation an investigation was already under way.' " <u>Moody</u>, 842 So. 2d at 759 (quoting <u>Nix</u>, 467 U.S. at 444, 457 (Stevens, J., concurring)); <u>see also</u> <u>Fitzpatrick</u>, 900 So. 2d at 514.  Thus, the rule first requires a "reasonable probability" that the evidence would have been discovered despite the improper police procedure. <u>United States v. Brookins</u>, 614 F.2d 1037, 1042 (5th Cir. 1980).  Second, the State cannot argue that some later or future investigation would have inevitably led to the discovery of the evidence; rather, the investigation must be ongoing and the State must show that the facts known by the police at the moment of the unconstitutional procedure would have led to the evidence notwithstanding the police misconduct.  <u>See</u> <u>Fitzpatrick</u>, 900 So. 2d at 514; <u>Moody</u>, 842 So. 2d at 759.

In <u>Fitzpatrick</u> and <u>Maulden</u>, we applied the inevitable discovery doctrine to scenarios in which an investigation was already under way.  <u>See</u> <u>Fitzpatrick</u>, 900 So. 2d at 514 (applying the inevitable discovery doctrine where police had initiated an investigation of the defendant prior to unconstitutionally requesting a blood

sample); <u>Maulden</u>, 617 So. 2d at 301 (applying the inevitable discovery doctrine where police had already started an investigation and located a stolen truck prior to improperly arresting and questioning the defendant). If there was no ongoing investigation and the prospect of eventual discovery was merely speculative, we have refused to apply the rule. <u>See</u> <u>Moody</u>, 842 So. 2d at 759 (refusing to apply the inevitable discovery doctrine where police, prior to unconstitutionally stopping a defendant for driving without a license, had neither initiated an investigation of the defendant nor obtained facts in their possession that would have led to the discovery of the evidence); <u>Jeffries</u>, 797 So. 2d at 578 (refusing to apply the inevitable discovery doctrine where the police improperly detained the defendant, had not yet obtained a warrant for his arrest, and were merely speculating as to his whereabouts).

Basing its decision on a review of the totality of the evidence that indicated that probable cause to obtain a warrant existed, the First District Court of Appeal has ruled that, where the officers had begun to seek a warrant, showing probable cause for a warrant existed is sufficient to demonstrate inevitable discovery. <u>McDonnell v. State</u>, 981 So. 2d 585 (Fla. 1st DCA 2008). In <u>McDonnell</u>, officers were investigating the theft of an ATM and went to McDonnell's home to speak to him. <u>Id.</u> at 587. McDonnell initially refused to consent to a search of his home, at which time an officer left to obtain a warrant. While waiting for the officer to

return, another officer requested and received consent to search.  Id.  The search led to incriminating evidence.  Id. at 588.  As in this case, the lower court determined that McDonnell's consent to search was not valid.  Id. at 589. Nevertheless, the First District affirmed the trial court's denial of McDonnell's motion to suppress, noting that

> federal law suggests that the inevitable discovery doctrine will not be applied in every case where the police had probable cause for a search warrant, but failed to get one.  The cases focus on whether police made an effort to get a warrant prior to the illegal search and whether strong probable cause existed for the search warrant.

Id. at 593.

Judge Hawkes dissented, citing United States v. Virden, 488 F.3d 1317, 1322 (11th Cir. 2007), and noted that the State should not benefit from illegal activity and "any other rule would effectively eviscerate the exclusionary rule." McDonnell, 981 So. 2d at 594 (Hawkes, J., dissenting).  Judge Hawkes emphasized that the burden is on the prosecution to demonstrate that the evidence actually would have inevitably been discovered, not that it merely could have been. Id.  Accordingly, Judge Hawkes would have ruled that probable cause is not sufficient when there has been no attempt to obtain a warrant before contact with the defendant.  Id. at 596.

The Fourth District Court of Appeal agreed with the reasoning of Judge Hawkes' dissent and found that where there had been no effort to obtain a warrant

before the misconduct occurred, inevitable discovery could not be found. Rowell v. State, 83 So. 3d 990, 993 (Fla. 4th DCA 2012) ("Under the inevitable discovery doctrine, if the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means, the evidence will be admissible." (citing Nix, 467 U.S. at 434)). There, officers were dispatched to an apartment complex in response to shots fired. After the officer established a perimeter, they placed the defendant in custody and decided to search his apartment for the safety of everyone on the scene. Id. Citing McDonnell, the Fourth District determined that "the prosecution made absolutely no showing that efforts to obtain a warrant were being actively pursued prior to the occurrence of the illegal conduct." Id. at 996. Further, the Fourth District found that the "[o]peration of the 'inevitable discovery' rule under the circumstances of this case would effectively nullify the requirement of a search warrant under the Fourth Amendment." Id.

Likewise, the First District has reaffirmed that "the inevitable discovery doctrine may be employed to deem a search lawful if probable cause to obtain a warrant existed and officers are 'in the process of obtaining a warrant' when the search occurs." King v. State, 79 So. 3d 236, 238 (Fla. 1st DCA 2012). In King, the First District found that the trial court erred in relying on the inevitable

discovery doctrine where "the officer testified that he did not attempt to get a warrant, and the State presented no evidence suggesting he did." Id.

Several federal courts require active and independent pursuit to meet the warrant requirement. See United States v. Quinney, 583 F.3d 891, 894 (6th Cir. 2009) (rejecting "the government's attempt to circumvent the [warrant] requirement via the [inevitable discovery] doctrine," when probable cause to obtain a warrant existed but officers failed to do so); Virden, 488 F.3d at 1322 (explaining that the active pursuit requirement is especially important as to not eviscerate the exclusionary rule); United States v. Mejia, 69 F.3d 309, 320 (9th Cir. 1995) (stating that the court "has never applied the inevitable discovery exception so as to excuse the failure to obtain a search warrant where the police had probable cause but simply did not attempt to obtain a search warrant," because to hold otherwise "would completely obviate the warrant requirement") (citing United States v. Echegoyen, 799 F.2d 1271, 1280 n.7 (9th Cir. 1986)); United States v. Silvestri, 787 F.2d 736, 746 (1st Cir. 1986) (recognizing that active pursuit may be necessary in certain situations to satisfy the test of inevitability and independence); United States v. Cherry, 759 F.2d 1196 (5th Cir. 1985) (holding that the prosecution must establish a reasonable probability that the evidence would have been discovered by lawful means, that the leads making the discovery inevitable were possessed by the police prior to the misconduct, and that the police were

actively pursuing the alternate line of investigation prior to the misconduct). However, even the federal courts that would not absolutely require pursuit of a warrant nevertheless require showing more than the existence of probable cause to obtain a warrant.  See United States v. Tejada, 524 F.3d 809, 813 (7th Cir. 2008) (requiring the government "to excuse its failure to have obtained a search warrant, to prove that a warrant would certainly, and not merely probably, have been issued had it been applied for"); United States v. Are, 590 F.3d 499, 507 (7th Cir. 2009) (reaffirming the rejection of the Virden standard as explained in Tejada and applying a "harmless error" approach); United States v. Cunningham, 413 F.3d 1199, 1204 (10th Cir. 2005) (applying the inevitable discovery doctrine after a warrantless search of a home where "officers' actions clearly indicate[d] they took steps to obtain a search warrant and that they intended to obtain the warrant . . . ."); United States v. Souza, 223 F.3d 1197, 1203 (10th Cir. 2000) ("While the inevitable discovery exception does not apply in situations where the government's only argument is that it had probable cause for the search, the doctrine may apply where, in addition to the existence of probable cause, the police had taken steps in an attempt to obtain a search warrant."); United States v. Allen, 159 F.3d 832, 834 (4th Cir. 1998) (rejecting the application of the inevitable discovery doctrine where the facts did not demonstrate a likelihood of inevitability absent the government's misconduct).

Our jurisprudence has been clear thus far that the inevitable discovery doctrine does not apply when the prosecution cannot demonstrate an active and independent investigation. Compare Moody, 842 So. 2d 754 with Fitzpatrick, 900 So. 2d 495. Furthermore, neither Moody nor Fitzpatrick involves warrantless searches of the home, as seen here. As recently affirmed by the United States Supreme Court, "when it comes to the Fourth Amendment, the home is first among equals. At the Amendment's 'very core' stands 'the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.' " Florida v. Jardines, 133 S. Ct. 1409, 1414 (2013) (quoting Silverman v. United States, 365 U.S. 505 (1961)). As such, we must hold firm the protections of the Fourth Amendment and find the actions here unreasonable.

Here, bondsmen contacted the Hialeah Police Department to report having seen the grow room in Rodriguez's house during their unrelated search for a fugitive. Officer Garfinkel was dispatched and arrived on scene. Officer Garfinkel testified that upon arrival, he observed the bondsmen on Rodriguez's porch and followed Rodriguez into his home. After following Rodriguez into his home, Officer Garfinkel personally observed the grow room operation, placed Rodriguez in handcuffs, and placed Rodriguez in the back of his squad car while contacting the narcotics unit. The narcotics officers arrived while Rodriguez remained handcuffed in the back of Garfinkel's car. At no point prior to this did any law

enforcement officer attempt to obtain a warrant. Upon the narcotics unit's arrival, the officers approached the handcuffed Rodriguez to request consent to search his home. He was released from the handcuffs to sign the consent form. The trial court properly found this consent to be coerced. Rodriguez, 129 So. 3d at 1137.

At no point after the bondsmen arrived on the scene was Rodriguez left alone. There were no exigent circumstances; nor was there any risk that evidence would be removed or destroyed. Prior to the warrantless search, the narcotics officers had eyewitness accounts from the bondsmen and a sworn law enforcement officer that they had observed grow lights and marijuana plants. The bondsmen and Officer Garfinkel also testified that they had been able to smell the marijuana from outside the home. Therefore, it is highly likely that had any of the narcotics officers sought a warrant, it would have been granted. However, it was not a certainty and it cannot be said that the prosecution would have been able to demonstrate that a separate investigation had been initiated prior to the misconduct, nor that any steps were taken in pursuit of a warrant.

The question before this Court is whether the inevitable discovery rule requires the prosecution to demonstrate that the police were in the process of obtaining a warrant prior to the misconduct or whether the prosecution need only establish that a warrant could have been obtained with the information available prior to the misconduct. We conclude that permitting warrantless searches without

the prosecution demonstrating that the police were in pursuit of a warrant is not a proper application of the inevitable discovery rule. The rule cannot function to apply simply when police could have obtained a search warrant if they had taken the opportunity to pursue one, but can only apply if they actually were in pursuit of one. Within the inevitable discovery exception to the exclusionary rule there is no room for probable cause to obviate the requirement to pursue a search warrant, for this would eliminate the role of the magistrate and replace judicial reasoning with the current sense impression of police officers.

Further, this case involves the sanctity of the home—a bedrock of the Fourth Amendment and an area where a person should enjoy the highest reasonable expectation of privacy. The constitutional guarantee to freedom from warrantless searches is not an inconvenience to be dismissed in favor of claims for police and prosecutorial efficiency. While it is true that here the police were already in possession of the information leading to the evidence before the misconduct, they failed to pursue a legal means to attain this evidence. The police attempted to gain consent from Rodriguez to enter his home, but his consent was found to be coerced and invalid. With no valid consent, and no pursuit of a search warrant, there are no legal means present that would have led to the evidence. In this way, the discovery was not inevitable notwithstanding the police misconduct, and the rule cannot be applied.

Because the exclusionary rule works to deter police misconduct by ensuring that the prosecution is not in a better position as a result of the misconduct, the rule cannot be expanded to allow application where there is only probable cause and no pursuit of a warrant. If the prosecution were allowed to benefit in this way, police misconduct would be encouraged instead of deterred, and the rationale behind the exclusionary rule would be eviscerated. Where the prosecution has made no showing that a search warrant was being actively pursued prior to the occurrence of the illegal conduct, application of the inevitable discovery rule would effectively nullify the requirement of a search warrant under the Fourth Amendment. In sum, prosecutors may not be permitted to benefit from the violation of constitutional rights. We cannot apply the inevitable discovery rule in every case where the police had probable cause to obtain a warrant but simply failed to get one. Accordingly, the officers' failure to seek a search warrant precludes the application of the inevitable discovery doctrine in this case.

## CONCLUSION

For the foregoing reasons, we quash the decision of the Third District Court of Appeal in <u>Rodriguez v. State</u>, 129 So. 3d 1135 (Fla. 3d DCA 2013), and remand for proceedings consistent with this opinion.

It is so ordered.

LABARGA, C.J., and PARIENTE and LEWIS, JJ., concur.

CANADY, J., dissents with an opinion, in which QUINCE and POLSTON, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

CANADY, J., dissenting.

Because I conclude that the failure of the police to initiate the process for securing a search warrant did not preclude application of the inevitable discovery doctrine, I would approve the decision on review. I would disapprove the decision in Rowell v. State, 83 So. 3d 990 (Fla. 4th DCA 2012), to the extent that it adopted a categorical rule, also adopted by the majority here, that pursuit of a search warrant is prerequisite to application of the inevitable discovery doctrine when the existence of probable cause justifying issuance of a search warrant is the basis asserted for the application of the doctrine. This categorical limitation on the inevitable discovery doctrine is inconsistent with the deterrent purpose of the exclusionary rule.

In Nix v. Williams, 467 U.S. 431, 447 (1984), in adopting the inevitable discovery exception to the exclusionary rule, the Supreme Court concluded that suppression of evidence is unwarranted "if the government can prove that the evidence would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching by the police." Justifying that conclusion, the Court observed that "there is no rational basis to keep [such] evidence from the

jury in order to ensure the fairness of the trial proceedings." Id. The Court further observed that suppression of such evidence "would do nothing whatever to promote the integrity of the trial process, but would inflict a wholly unacceptable burden on the administration of criminal justice." Id. But the major focus of the Court's justification of the inevitable discovery rule was based on its analysis of the deterrent purpose of the exclusionary rule.

The underlying principle is this: "the interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a worse, position that they would have been in if no police error or misconduct had occurred." Id. at 443. The deterrent purpose of the exclusionary rule generally is served if the police will gain no advantage by virtue of unconstitutional conduct and thus have no incentive to engage in that conduct. The Court reasoned that the inevitable discovery rule is consistent with the deterrent purpose of the exclusionary rule because "when an officer is aware that the evidence will inevitably be discovered, he will try to avoid engaging in any questionable practice" since "there will be little to gain from taking any dubious 'shortcuts' to obtain the evidence." Id. at 445-46. The Court also noted that "[s]ignificant disincentives to obtaining evidence illegally—including the possibility of departmental discipline and civil liability—also lessen the likelihood that the

ultimate or inevitable discovery exception will promote police misconduct." Id. at 446. Given all these circumstances, the Court rejected the argument that the inevitable discovery rule should include a requirement that the government prove an absence of bad faith.

In applying the inevitable discovery rule, we have held that evidence discovered by the police based on a constitutional violation is not subject to suppression if the evidence "would have been found independently . . . by means of normal investigative measures that inevitably would have been set in motion as a matter of routine police procedure." Craig v. State, 510 So. 2d 857, 863 (Fla. 1987). The facts presented by the case on review fall squarely under that principle of law. Based on the record before us, it is undeniable that—as the trial court found—if the police had not acted on the constitutionally infirm consent to search, they would have proceeded to obtain a search warrant based on the information provided to them by the bondsmen. Only a flight of fancy could lead to a contrary conclusion.

In this case, we need not decide whether the inevitable discovery rule can be applied to the warrantless search of a dwelling conducted without any colorable legal basis. And to conclude that suppression is unjustified in this case, we need not adopt a rule that suppression will never be available for evidence obtained in the warrantless search of a dwelling if the police had probable cause justifying the

issuance of a search warrant that would have led to the discovery of that evidence. It might be argued that such a broad rule would inevitably produce a perverse incentive to deliberately erode the requirement for obtaining a warrant. In any event, resolution of this case requires only that we recognize that suppression of the evidence here—where the police acted on the basis of consent to search that was determined to be invalid—would be inconsistent with the purpose of the exclusionary rule.

As the Supreme Court explained in Herring v. United States, 555 U.S. 135, 144 (2009):

> To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence.

The "bottom-line effect" of the exclusionary rule

> in many cases, is to suppress the truth and set the criminal loose in the community without punishment. [The case law holds] that society must swallow this bitter pill when necessary, but only as a "last resort." For exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs.

Davis v. United States, 131 S. Ct. 2419, 2427 (2011) (quoting Hudson v. Michigan, 547 U.S. 586, 591 (2006)) (internal citations omitted). This understanding of the exclusionary rule strongly cuts against the cramped reading of the inevitable discovery exception adopted by the majority.

The record here supports the conclusion that the conduct of the police was neither deliberate, reckless, nor grossly negligent.  The police acted on the basis of a consent to search, which was determined to be invalid based on the circumstances in which the consent was requested by the police—circumstances involving the presence of several armed police officers, including an officer wearing a mask.  There is no suggestion in the record of any threats or physical coercion.  Nor is there any suggestion that the police understood the consent they obtained to be invalid.  The mistake made by the police in this case does not justify the cost that is imposed by the suppression of the evidence—evidence which would readily have been available to the police through routine measures leading to the issuance of a search warrant.

"The purpose of the inevitable discovery rule is to block setting aside convictions that would have been obtained without police misconduct."  Nix, 467 U.S. at 443 n.4.  That purpose is thwarted by the decision in this case.  The conduct of the police here was neither "sufficiently deliberate" nor "sufficiently culpable" to justify the "bitter pill" of "setting the criminal loose in the community without punishment."  I dissent.

QUINCE and POLSTON, JJ., concur.

Application for Review of the Decision of the District Court of Appeal - Direct Conflict of Decisions

Third District - Case No. 3D12-2097

(Miami-Dade County)

Carlos Jesus Martinez, Public Defender, and Shannon Hemmendinger, Assistant Public Defender, Eleventh Judicial Circuit, Miami, Florida,

for Petitioner

Pamela Jo Bondi, Attorney General, Tallahassee, Florida; Jill Diane Kramer, Assistant Attorney General, and Richard L. Polin, Bureau Chief, Miami, Florida,

for Respondent