NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

ARMANDO RAFAEL PEREZ,                    )
DOC #H47989,                             )
                                         )
              Appellant,                 )
                                         )
v.                                       )          Case No. 2D17-2331
                                         )
STATE OF FLORIDA,                        )
                                         )
              Appellee.                  )
_____  )

Opinion filed October 26, 2018.

Appeal from the Circuit Court for Polk
County; Wayne M. Durden, Judge.

Elizabeth J. Johnson of Halscott Megaro,
P.A., Orlando, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Susan D. Dunlevy,
Assistant Attorney General, Tampa, for
Appellee.


BADALAMENTI, Judge.

        Armando Rafael Perez appeals from his convictions and sentences for

several counts of video voyeurism.  Although he raises several issues on appeal, we

need only address whether the trial court erred by denying in part his motion to

suppress evidence seized subsequent to a warrantless search of the hard drive of his

personal laptop computer. That search yielded several secret recordings of his adult stepdaughter, K.P., in her bedroom while she was in various states of undress. After careful review and the benefit of oral argument, we reverse the order denying Mr. Perez's motion to suppress because the trial court misapplied the inevitable discovery doctrine.[1]

In his motion to suppress, Mr. Perez sought the exclusion of the videos that formed the basis of his convictions for video voyeurism. At the suppression hearing, the State presented two witnesses: Ms. Perez, Mr. Perez's then-spouse and mother of K.P., and the investigating detective.

Mr. Perez, his wife, stepson, and stepdaughter, K.P., lived in the same house. Ms. Perez testified that she received a telephone call from her daughter, K.P., alerting her that K.P. had discovered that the television in the living room of their home displayed a live video feed from K.P.'s bedroom. K.P. had discovered the live feed when she pushed the wrong button on the television's remote control, which changed the video input to display a live video feed of her bedroom. After Ms. Perez returned home, she accessed Mr. Perez's laptop "to see if there were any . . . videos on there." Ms. Perez described the laptop as "Armando's" laptop. She testified that Mr. Perez did not "give [her] permission to access his laptop" and that it was the "first time . . . [she] had ever accessed [Mr. Perez's] computer." Ms. Perez searched the files on Mr.

---

[1]We decline the State's invitation to employ the "tipsy coachman" rule and affirm on grounds that the warrantless search of Mr. Perez's laptop fell within the good faith exception to the exclusionary rule. It would be inappropriate to consider the State's argument because, among other reasons, the trial court did not make factual findings as to the applicability of this exception below. See Fitzsimmons v. State, 935 So. 2d 125, 128 (Fla. 2d DCA 2006) (declining to employ the tipsy coachman rule).

Perez's laptop and identified several videos of her adult daughter in various states of undress.

Ms. Perez called the police and reported the incident. The detective who responded to Ms. Perez's report was assigned to the Computer Crimes Unit of his law enforcement agency. When the detective arrived at the residence, only Ms. Perez and K.P. were present. Ms. Perez advised the detective both about the videos of K.P. she discovered on Mr. Perez's laptop and the hidden cameras inside K.P.'s bedroom. The detective identified small pinhole cameras hidden within an electrical outlet and the smoke alarms inside K.P.'s bedroom. Those hidden cameras were hardwired to a digital video recorder stored underneath the television in the living room, where K.P. had discovered the live feed of her bedroom earlier that day.

At that point, the detective obtained sworn statements from Ms. Perez and K.P. He also telephoned the state attorney's office from the Perez residence and spoke with an assistant state attorney, whom he described as an "intake attorney" who "handles most of the cases that come from the Computer Crimes Unit." The detective advised the intake attorney that he believed he had probable cause to obtain a search warrant to search the contents of the laptop. He also advised the intake attorney that Ms. Perez was willing to consent to the search of the laptop. The detective then asked the intake attorney "whether or not [he] should work off of consent or get a search warrant at that point." The intake attorney, who had thirty years' experience at the state attorney's office, said "to go ahead and work on the consent of [Ms. Perez] to conduct the examination of the computer." The detective testified that at the time he called the intake attorney, he was "prepared and ready to start typing out the search warrant."

(Emphasis added.) The detective instead received Ms. Perez's written consent to search the hard drive of Mr. Perez's personal laptop. Ms. Perez then surrendered Mr. Perez's laptop to the detective. Thereafter, law enforcement conducted a warrantless search of the hard drive of Mr. Perez's laptop and located the videos of K.P., which formed the basis for Mr. Perez's voyeurism charges and convictions.

The trial court subsequently issued a written order denying Mr. Perez's motion to suppress the videos obtained from the warrantless search of his laptop. It first found that the consent to the search of Mr. Perez's laptop by Ms. Perez was invalid because Ms. Perez had no authority to consent to the search of a laptop that did not belong to her. Nevertheless, the trial court accepted the sole remaining argument advanced by the State, concluding that the videos obtained from the search of the laptop were admissible under the inevitable discovery doctrine.

To support its conclusion, the trial court found that the detective possessed probable cause that would have supported the issuance of a warrant to search Mr. Perez's laptop. The court reasoned that "[b]ut for the misadvice [from the intake attorney that the detective telephoned], law enforcement would have been actively engaged in writing and obtaining a search warrant." The court concluded that "the contents of [Mr. Perez's] computer would have been inevitably discovered."

Following the suppression hearing, Mr. Perez's counsel advised the trial court that Mr. Perez would proceed to trial unless the State would agree to stipulate that the order denying the motion to suppress was dispositive or the court would certify the order as dispositive. The State refused to agree to the dispositiveness of the order, and the trial court stated it was not in a position to make such a finding. Mr. Perez elected to

- 4 -

proceed to trial. At the jury trial, the State introduced the videos obtained from the warrantless search of the laptop. Mr. Perez was convicted as charged.

On appeal, Mr. Perez argues that the trial court erred by denying his motion to suppress the videos stored on the hard drive of his personal laptop. Specifically, he contends that the trial court erred in its application of the inevitable discovery doctrine because law enforcement was not in active pursuit of a warrant prior to the warrantless search of his laptop. We agree. Bound by our supreme court's decision in Rodriguez v. State, 187 So. 3d 841 (Fla. 2015), we hold that the trial court erred in holding that the videos were admissible under the inevitable discovery doctrine.

"A trial court's ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness and the court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court's ruling." Id. at 845 (quoting Terry v. State, 668 So. 2d 954, 958 (Fla. 1996)). "[A]ppellate courts defer to the trial court's factual findings so long as the findings are supported by competent, substantial evidence, and review de novo the legal question of whether there was probable cause given the totality of the factual circumstances." Id. (quoting State v. Hankerson, 65 So. 3d 502, 506 (Fla. 2011)).

Both the Fourth Amendment to the United States Constitution and the Florida Constitution prohibit unreasonable searches and seizures. Amend. IV, U.S. Const.; Art. I, § 12, Fla. Const. Absent a warrant issued by a neutral and detached magistrate, a search is per se unreasonable. Katz v. United States, 389 U.S. 347, 357 (1967). It is axiomatic that "[w]here a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing, . . . reasonableness generally requires the

- 5 -

obtaining of a judicial warrant." Riley v. California, 134 S. Ct. 2473, 2482 (2014) (alteration in original) (quoting Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 653 (1995)). "In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement." Id.

One exception to the warrant requirement is consent to the search of the item. Here, the State does not dispute that the search of Mr. Perez's laptop was based on invalid consent because Ms. Perez had no authority to consent to the search. Indeed, Ms. Perez testified that it was "Armando's" laptop, that Mr. Perez did not "give [her] permission to access his laptop," and that it was the "first time . . . [she] had ever accessed [Mr. Perez's] computer." See King v. State, 79 So. 3d 236, 238 (Fla. 1st DCA 2012) ("[T]here is no right on the part of a third party to consent to a search of personal property belonging to another person unless there is evidence of both common authority over and mutual usage of the property." (alteration in original) (quoting Kelly v. State, 77 So. 3d 818, 825 (Fla. 4th DCA 2012))).

The inevitable discovery doctrine is another exception to the Fourth Amendment's warrant requirement. See Nix v. Williams, 467 U.S. 431, 447 (1984); Rodriguez, 187 So. 3d at 845. Under the inevitable discovery doctrine, evidence obtained as a result of an illegal search "may still be admissible provided the evidence would ultimately have been discovered by legal means." Rodriguez, 187 So. 3d at 845 (quoting Fitzpatrick v. State, 900 So. 2d 495, 514 (Fla. 2005)). Although not elucidated by Nix, our supreme court, in a 4-to-3 decision, held that the inevitable discovery doctrine also requires the prosecution to demonstrate that a search warrant was being actively pursued prior to the illegal search. Id. at 849-50. As the majority in Rodriguez

noted, the cases applying the inevitable discovery doctrine "focus on whether police made an effort to get a warrant prior to the illegal search and whether strong probable cause existed for the search warrant." Id. at 847 (quoting McDonnell v. State, 981 So. 2d 585, 593 (Fla. 1st DCA 2008)).

In Rodriguez, a law enforcement officer obtained consent from the defendant to search his home. Id. at 844. The officer then searched the home and found a marijuana "grow room." Id. The defendant moved to suppress the evidence, and the trial court denied the motion. Id. Although the trial court found that the defendant's consent to the warrantless search of his home was invalid, the court determined that the evidence would have been inevitably discovered. Id. The trial court concluded that the inevitable discovery doctrine applied because probable cause had been established before law enforcement requested consent. Furthermore, it found that had the officer not obtained consent to the search, the officer "would have gone and gotten a warrant." Id. On appeal, the Third District affirmed the trial court's denial of the motion to suppress. Id. Our supreme court reversed, concluding that the trial court's application of the inevitable discovery doctrine was improper because the "officers' failure to seek a search warrant preclude[d] the application of the inevitable discovery doctrine." Id. at 850.

Announcing its holding that the inevitable discovery doctrine requires the prosecution to make a showing that law enforcement was in active pursuit of a search warrant, the Rodriguez court explained that the doctrine "cannot function to apply simply when police could have obtained a search warrant if they had taken the opportunity to

pursue one." Id. at 849. This is because such a rule would "effectively nullify the requirement of a search warrant under the Fourth Amendment." Id. at 850.

Just as in Rodriguez, the trial court here erred in relying on the inevitable discovery doctrine, an exception to the warrant requirement, to support its denial of Mr. Perez's motion to suppress. Applying the first part of the inquiry set forth in Rodriguez, there is no question that law enforcement possessed probable cause that would have supported the issuance of a warrant to search Mr. Perez's laptop. The detective conducted a lawful search of the home, located the hidden cameras inside K.P.'s bedroom, and was informed by Ms. Perez that Mr. Perez's laptop contained videos depicting K.P. in various states of undress in her bedroom. But the analysis does not stop there. That the detective had probable cause to conduct the search of Mr. Perez's personal laptop is insufficient to justify the detective's failure to obtain a warrant to search the laptop. See id. at 849 ("[T]here is no room for probable cause to obviate the requirement to pursue a search warrant, for this would eliminate the role of the magistrate and replace judicial reasoning with the current sense impression of police officers."); Clayton v. State, 43 Fla. L. Weekly D1756, D1757 (Fla. 1st DCA Aug. 1, 2018) (concluding that probable cause alone was insufficient to justify a warrantless search of the defendant's home and noting that if probable cause alone was sufficient, "any time police have probable cause to search a home, they could do so without seeking a search warrant and the State would be permitted to introduce evidence seized in such a search by asserting that the evidence would have been discovered inevitably").

The second part of the inquiry set forth in Rodriguez is whether the prosecution demonstrated that the police were actively pursuing a search warrant prior to the occurrence of the illegal search. See Rodriguez, 187 So. 3d at 849-50. The trial court neglected to properly apply this requirement. At the suppression hearing, the detective testified that although he "was prepared and ready to start typing out the search warrant," he did not do so. (Emphasis added.) The detective instead made a decision to forgo the search warrant affidavit process. He received written consent from Ms. Perez to search the laptop, which was invalid because, as previously explained, she had no authority to consent to the search. See King, 79 So. 3d at 237 (reversing the denial of a motion to suppress where officers conducted a search of the defendant's safe after relying on improper consent by the defendant's wife to the search). Because there was no evidence that a search warrant was being actively pursued prior to the illegal search of the laptop's contents, the trial court erred in its application of the inevitable discovery doctrine. See Rodriguez, 187 So. 3d at 850 (concluding that law enforcement's failure to seek a search warrant precluded application of the inevitable discovery doctrine); Clayton, 43 Fla. L. Weekly at D1757 (reversing denial of a motion to suppress evidence where officers conducted a search of the defendant's home after relying on the defendant's invalid consent to the search and where the officers made no attempt to secure a search warrant).

In its appellate brief and at oral argument, the State asserted that the detective's telephone call to the state attorney's office inquiring as to whether to secure a search warrant or simply obtain Ms. Perez's consent constituted active pursuit of a search warrant. That telephone call, the State contends, satisfied the second part of the

inquiry set forth in Rodriguez. We reject that argument. The State has neither cited, nor have we identified, a single case holding that a law enforcement officer's telephone call to a prosecutor to ask for advice on whether a search warrant is required constitutes "active pursuit of a search warrant." Courts applying the inevitable discovery doctrine have held that law enforcement actively pursued a search warrant only where law enforcement took affirmative steps to secure a warrant directly from a neutral and detached magistrate. See, e.g., United States v. Lamas, 930 F.2d 1099, 1103-04 (5th Cir. 1991) (concluding that the inevitable discovery doctrine applied where probable cause to obtain a search warrant existed and where a law enforcement officer took active steps to obtain a warrant by heading to his patrol vehicle to draft an affidavit to the magistrate but abandoned that effort after another officer informed him that the defendant had agreed to sign a consent form).

On this record, we conclude that the inevitable discovery doctrine cannot apply where, as here, the State's only preserved argument is that strong probable cause existed for a search warrant and that the law enforcement officer "could have" obtained a warrant but decided not to actively pursue one because a prosecutor told the officer that consent would suffice. The trial court's ruling contravenes the dictates of Rodriguez. That the detective, as the trial court found, "would have been actively engaged in writing and obtaining a search warrant for the contents of the computer" but for the assistant state attorney's "misadvice" matters not in the milieu of the active pursuit requirement set forth in Rodriguez. On this record, the detective did nothing to actively pursue a search warrant. Indeed, although the detective was prepared and ready to start typing out an affidavit to obtain a search warrant from a neutral and

detached magistrate, the detective chose not to transfer his readiness to do so into action. Choosing to do nothing in this context is the polar opposite of actively pursuing a search warrant.

In sum, we conclude that the trial court erred in denying in part the motion to suppress because it improperly applied the inevitable discovery doctrine. The trial court's ruling contravenes Rodriguez because the detective here did not actively pursue a search warrant. We reject the State's argument that a telephone call to an assistant state attorney inquiring as to whether to secure a search warrant, without more, satisfies the "active pursuit requirement" elucidated by our supreme court in Rodriguez. The Fourth Amendment's warrant requirement would be wholly undercut if a law enforcement officer can sidestep the requirement by making a single telephone call to a prosecutor to ask if he needs to start the process of obtaining a search warrant. The would-be audience of a search warrant affidavit is a neutral and detached magistrate, not a prosecutor. Although the route the detective took to seize the incriminating evidence here was more expedient, "[t]he constitutional guarantee to freedom from warrantless searches is not an inconvenience to be dismissed in favor of claims for police and prosecutorial efficiency." See Rodriguez, 187 So. 3d at 849.

The error in admitting the videos cannot be considered harmless in this case. See State v. DiGuilio, 491 So. 2d 1129, 1139 (Fla. 1986). Bound by Rodriguez, we reverse with instructions for the trial court to vacate Mr. Perez's convictions and sentences. We remand for a new trial. See Albritton v. State, 769 So. 2d 438, 439 (Fla. 2d DCA 2000) (reversing and remanding for a new trial where the trial court erred in denying a motion to suppress).

Reversed and remanded with instructions.


CASANUEVA, J., and LEE, LAUREL M., ASSOCIATE JUDGE, Concur.