EVANDER, C.J.
After the denial of his amended motion to suppress,[1] Appellant, Robert O'Hare, entered a nolo contendere plea to multiple counts of possession of child pornography, multiple counts of video voyeurism, possession of a short-barreled shotgun, and resisting *257 or obstructing an officer without violence. On appeal, Appellant argues that the warrantless search of his residence was unlawful and that the trial court erred in relying on the inevitable discovery doctrine in denying his motion. Although we agree that the inevitable discovery doctrine does not support the denial of Appellant's motion, we conclude that this cause should be remanded for the trial court to consider the applicability of the independent source doctrine.
On September 17, 2015, Ocoee Police Detective Sean Walsh notified Detective Robert Hart, from the Lake County Sheriff's Office, about a child pornography investigation. Walsh told Hart that a person using the screen name John@Ares was downloading child pornography using the Ares network and was sharing it using the peer-to-peer network from a specified Internet Protocol ("IP") address. Walsh secured a search warrant, which allowed him to obtain the IP address information. The IP address was associated with a business. Walsh informed Hart that John@Ares shared child pornography with him on two separate dates prior to September 17.
The following day, Walsh notified Hart that John@Ares was again sharing child pornography at the business. Hart arrived at the location and used an application that allowed him to identify users connected to the wireless network. Walsh advised Hart that the user John@Ares was logging on with a PC (as opposed to an Apple Mac) computer because most Ares network users utilize a PC. Hart did not see any users with the name John connected to the network at that time.
On September 21, 2015, Hart and another detective returned to the business and noticed one person, later identified as Appellant, using a Toshiba laptop PC, a Computer Pad tablet, and a black computer bag. Hart again used the application that allowed him to see who was connected to the wireless network and identified a user by the name of JOHNSMITH-PC as being connected to the network. Appellant was the only patron observed using a PC, and Hart obtained a photograph of him. At that time, Walsh advised Hart that the Ares network was not being used to download child pornography.
On September 30, 2015, Walsh advised Hart that John@Ares was sharing child pornography. Hart returned to the business and observed Appellant using a Toshiba PC. One couple was observed using a Mac computer, but Hart determined that only one PC was connected to the wireless network with the associated username of JOHNSMITH-PC. After Walsh confirmed again that John@Ares was sharing pornography, Hart photographed Appellant, the Toshiba laptop being used, and the tablet that was also in his hand. Hart saw Appellant leave the business and drive away in a white SUV. After Appellant left One Flight Up, JOHNSMITH-PC was no longer connected to the wireless network. Later, Hart received from Walsh a DVD containing the Ares report and pornographic files that were downloaded.
On October 5, 2015, Walsh informed Hart that John@Ares was connected to the business' network and "had multiple files of interest." Hart and several other detectives arrived on scene and verified that Appellant was there with his computer bag. Appellant left shortly after the detectives arrived.
After Appellant left the business and returned home, Corporal Chad Harmon and two other detectives went to Appellant's residence for a "knock and talk" to try to obtain consent to search for evidence of the suspected crime. Upon arrival, Harmon informed Appellant that he suspected Appellant was in possession of child pornography and that Appellant *258 could either consent to a search of his residence or the house would be secured while a search warrant was obtained. Appellant denied consent and repeatedly demanded to see a warrant. As Appellant tried to close the front door, Harmon stuck his foot in the doorway, blocking it from being closed. Harmon testified that this was standard practice, and that because Appellant knew why law enforcement was present, there was a risk that evidence would be destroyed if they left.
For officer safety, Harmon and the other detectives entered the residence and conducted a protective sweep because Appellant initially refused to indicate whether there was anyone else inside the residence. During the sweep, Harmon remained with Appellant. Harmon asked Appellant to step outside, but he declined. When Appellant attempted to step around Harmon in an effort to retreat further into the residence, Harmon grabbed Appellant. The detectives conducting the protective sweep heard a struggle and returned to aid Harmon in detaining Appellant. Appellant's mother entered the foyer and began video recording the transaction.
After the protective sweep, Detective Hart entered Appellant's bedroom and saw the Toshiba laptop that Appellant had been using the business. The laptop was not moved, opened, or otherwise touched at that time. Additionally, Appellant's mother made it clear that she was concerned with law enforcement either having discovered or discovering her deceased husband's gun(s). After being in the residence for about an hour, Detective Hart left to secure a search warrant.
In the warrant affidavit, Hart mentioned that Appellant had denied consent to search his home and that a struggle had ensued resulting in Appellant and the home being secured. However, the probable cause for issuance of the search warrant rested on the investigation conducted prior to entering Appellant's home.
Later in the evening, Hart returned with a search warrant and a search ensued. Police seized the Toshiba laptop and determined that: (1) the user name associated with the device was "John Smith"; (2) the laptop had the ARES program on it; and (3) there were numerous child pornography files saved to the device. Police also found a short-barreled shotgun in Appellant's closet.
The State ultimately charged Appellant by amended information with fifty-one counts of possession of child pornography, twenty-six counts of felony video voyeurism, possession of a short-barreled shotgun, and resisting a law enforcement officer without violence. Appellant filed an amended motion to suppress seeking suppression of the short-barreled shotgun and all evidence obtained from the electronic devices seized during the search of his residence. The State responded by arguing that the warrantless entry into Appellant's home was not unlawful. Alternatively, the State argued that if the entry was unlawful, evidence should not be suppressed on the basis of the independent source and/or inevitable discovery doctrines.
After conducting an evidentiary hearing on Appellant's motion, the trial court determined that the warrantless search of Appellant's residence was unlawful. The State does not challenge that determination on appeal. Nonetheless, the trial court denied the motion to suppress under the inevitable discovery doctrine because law enforcement had commenced an investigation of Appellant prior to the police misconduct. Based on the Florida Supreme Court's decision in Rodriguez v. State , 187 So.3d 841 (Fla. 2015), we respectfully disagree with the trial court's conclusion.
A ruling on a motion to suppress involves a mixed question of fact and law.
*259 State v. Kindle , 782 So.2d 971, 973 (Fla. 5th DCA 2001). "The standard of review [an appellate court] must apply to the findings of fact is whether competent, substantial evidence supports the findings." Id. The evidence and reasonable inferences must be construed most favorable to sustaining the trial court's ruling. Id. "The trial court's application of the law to the facts is reviewed de novo ." Id.
The exclusionary rule will generally serve to suppress evidence discovered pursuant to an unlawful search or seizure. See State v. White , 660 So.2d 664, 666 (Fla. 1995) ("The exclusionary rule inhibits governmental breach of the principles embodied in the Fourth Amendment by prohibiting governmental use of evidence seized in violation of the rule."). The inevitable discovery doctrine is an exception to the exclusionary rule. Nix v. Williams , 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). It requires the prosecution to prove "by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." Id. In Rodriguez , the Florida Supreme Court addressed the question of whether, in the context of an unlawful search of a suspect's home, the inevitable discovery doctrine required "the prosecution to demonstrate that the police were in the process of obtaining a warrant prior to the misconduct or whether the prosecution need only establish that a warrant could have been obtained with the information available prior to the misconduct." 187 So.3d at 849. There, while engaged in a warrantless search of Rodriguez's residence, law enforcement officers discovered illegal drugs. Although the officers had information that would have supported the issuance of a search warrant for Rodriguez's premises, they had not attempted to secure a search warrant prior to entering his residence. Our supreme court concluded that in order to rely on the inevitable discovery doctrine, the state was required to show that law enforcement officers were seeking a search warrant prior to the police misconduct:
We conclude that permitting warrantless searches without the prosecution demonstrating that the police were in pursuit of a warrant is not a proper application of the inevitable discovery rule. The rule cannot function to apply simply when police could have obtained a search warrant if they had taken the opportunity to pursue one, but can only apply if they actually were in pursuit of one.
Id.
Here, as in Rodriguez , the State failed to show that law enforcement was in pursuit of a search warrant at the time of the improper entry into Appellant's residence. Accordingly, it was error for the trial court to rely on the inevitable discovery doctrine to deny Appellant's amended motion to suppress. See Clayton v. State , 252 So.3d 827 (Fla. 1st DCA 2018) (holding that inevitable discovery doctrine supports admission of illegally obtained evidence only when police had actively sought to obtain search warrant before searching home).
In denying Appellant's amended motion to suppress, the trial court did not address the State's alternative argument that Appellant's motion should be denied pursuant to application of the independent source doctrine. The independent source doctrine is closely related to the inevitable discovery doctrine. Nix , 467 U.S. at 443, 104 S.Ct. 2501. "[T]he 'exclusionary rule' has no application where the government can show it has learned of the challenged evidence from an 'independent source.' The rule applies where the illegal search or seizure was not an actual cause of the discovery of the subject evidence." State v. Ojeda , 147 So.3d 53, 61 (Fla. 3d DCA 2014). The independent source rule "applies when evidence is discovered as a result of unlawful police activity but is also *260 discovered independently through a lawful investigation that occurs either before or after the illegal activity, so long as the independent investigation itself is 'untainted by the initial activity.' " Id. at 65 (quoting Jackson v. State , 1 So.3d 273, 278 (Fla. 1st DCA 2009) ). In the instant case, police developed probable cause to believe that Appellant was in possession of child pornography based on the investigation conducted prior to the illegal entry. However, we decline the State's invitation to affirm the trial court's order under the Tipsy Coachman doctrine. The trial court's order does not set forth all of the factual findings that would permit us to fully and independently address the application of the independent source doctrine in this case. Accordingly, we remand this case to the trial court to determine the application of the independent source doctrine in ruling on Appellant's amended motion to suppress.
REVERSED and REMANDED.
WALLIS and HARRIS, JJ., concur.

The parties stipulated that Appellant's motion was dispositive.