712 So.2d 1152 (1998)
Erick SANCHEZ, Appellant,
v.
STATE of Florida, Appellee.
No. 97-1547.
District Court of Appeal of Florida, Fifth District.
June 12, 1998.
*1153 F. Wesley Blankner, Jr., Orlando, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Rebecca Roark Wall, Assistant Attorney General, Daytona Beach, for Appellee.
GRIFFIN, Chief Judge.
Appellant, Erick Sanchez ["Sanchez"], seeks review of the denial of a motion to suppress. We affirm.
Sanchez was charged with possession of cocaine with intent to deliver, possession of marijuana with intent to deliver, possession of more than twenty grams of marijuana, and resisting an officer without violence. He filed a motion to suppress cocaine and marijuana seized during the traffic stop which led to his arrest. The motion alleged that Sanchez's initial detention was illegal under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), so that all evidence seized as a result of his initial detention must be suppressed.
At the hearing on the motion to suppress, Corporal Waite of the Orange County Sheriff's Office testified that he was on road patrol in Orange County on October 17, 1996, at approximately 2:30 a.m. He stopped at a stoplight behind a Honda, which was driven by Sanchez, and, when the light changed to green, the Honda rapidly accelerated and spun its wheels, so that it could cut into the outside lane and make an immediate right-hand turn. In so doing, the Honda cut off another car. Corporal Waite made a right-hand turn behind Sanchez onto Lancaster Road and activated his lights to stop Sanchez. Sanchez did not stop for more than half a mile, although there were a number of places he could have stopped, including several shopping centers. Sanchez eventually pulled into Lancaster Villas, and stopped in the middle of the parking lot. Officer Waite asked Sanchez to shut off the vehicle and exit the car. There was also a passenger in the passenger seat. Waite had to repeat the request several times before Sanchez finally complied. Sanchez seemed very "nervous and fidgety" during the stop. He kept turning and walking away, and putting his hands back into his pockets after being asked to take them out. Corporal Waite decided to secure Sanchez with handcuffs until he could pat him down. He also called for back-up. Deputy Rivera arrived on the scene in response to Corporal Waite's call for back-up. Officer Waite then asked the passenger to step out of the vehicle to speak with Deputy Rivera.
Corporal Waite conducted a pat-down of Sanchez during which Sanchez again tried to walk away and pull away. The pat-down produced $540 in cash, some checks, some papers, his driver's license and a cell phone, but no weapons or contraband. As they stood by the car, however, Corporal Waite glanced down into the vehicle and observed a clear plastic bag lying between the driver's seat and the emergency brake. He later testified that:
[I]t was visible from outside, looking into the car. From outside the car it was visible. It was in plain view. It was not tucked down in between, or tucked under anything. It was basically sitting right there.
The bag contained smaller packets of a white powdery substance which the officer believed to be cocaine.
Upon finding the cocaine, Waite secured Sanchez in the back of his patrol car and conducted a search incident to arrest. He tested the white substance found in the vehicle and it tested positive for cocaine. Underneath the back seat he found a plastic-style grocery bag containing a large ziplock baggie containing a substance which the officer believed was marijuana. He found more marijuana and a scale inside a second ziplock bag which was inside a cloth bag found under the driver's seat.
Defense counsel conceded that the initial stop was valid, but argued that the stop turned into an arrest when Sanchez was handcuffed. He also challenged Corporal Waite's assertion that the cocaine was in plain view, suggesting that the only thing in plain view was the baggie itself (and not the *1154 cocaine). The state countered that Corporal Waite was permitted to handcuff Sanchez prior to conducting the pat-down in the interest of the officer's safety. The state further argued that Corporal Waite discovered the cocaine immediately after the pat-down had been completed.
In a written order, the court denied Sanchez's motion to suppress, stating in relevant part:
In the instant case, the officer had at least a well-founded suspicion that Defendant had committed a traffic violation. As noted above, the officer was justified in stopping Defendant on that basis. Because of Defendant's failure to immediately stop his car, failure to turn off and exit his car, and nervous actions and behavior while talking to the officer, the officer was justified in believing that Defendant might have been armed or dangerous. According to the case law, it was not unreasonable for the officer to conduct a pat-down search and handcuff Defendant under these circumstances. The officer's testimony also established that the entire stop and search lasted for only 7-10 minutes. The evidence demonstrated that the stop and search was temporary, reasonable and justified by the officer's concerns for his safety.
After the denial of his motion to suppress, Sanchez pled nolo contendere to possession of cocaine and marijuana with intent to sell or deliver,[1] reserving the right to appeal the denial of his motion to suppress.
Sanchez principally argues on appeal that Corporal Waite's testimony fails to establish the incriminating nature of the object he saw between the seats. Waite testified, however, that he saw "a clear plastic bag containing what appeared to be smaller packets of a white powdery substance." He also testified that "[b]ased upon my training, previous arrests that I made, schools that I have attended, I recognized it, based upon the way it was packaged, and its appearance, it appeared to be cocaine." This testimony appears sufficiently detailed to establish that Corporal Waite observed contraband in plain view.
AFFIRMED.
W. SHARP and THOMPSON, JJ., concur.
NOTES
[1] As part of the plea, the state agreed to enter a nolle prosequi with respect to the remaining two counts.