OLIVER L. GREEN, Senior Judge.
Frank Paul Cilio appeals his judgments for committing a lewd, lascivious or indecent act on a child less than sixteen years of age. He argues that the trial court erred in denying the motion to suppress his confession because the confession was obtained in violation of his Miranda[1] rights. The trial court denied the motion, finding that Mr. Cilio was not in custody when the statements were made and that the statements were voluntary. We affirm.
When reviewing a motion to suppress, the standard of review for the trial court’s application of the law to its factual findings is de novo, but a reviewing court must defer to the factual findings of the trial court that are supported by competent, substantial evidence. State v. C.F., 798 So.2d 751 (Fla. 4th DCA 2001). A trial court ruling regarding the voluntary nature of a statement comes to the appellate court with a presumption of correctness, and it cannot be reversed unless it is clearly erroneous. State v. Sawyer, 561 So.2d 278 (Fla. 2d DCA 1990).
In the instant case, Detectives Dominic lorio and Robert Bang of the Sarasota County Sheriffs Department went to Mr. Cillo’s home on the morning of May 10, 2000. Detective lorio asked Mr. Cilio if he would go to the sheriffs office and talk with them. Mr. Cilio indicated that he would but that he did not have a working vehicle. Detective lorio said that he would be “glad to provide a ride” to Mr. Cilio, and Mr. Cilio agreed to go with them. Before the interview began, Detective lor-io read Mr. Cilio his Miranda rights. Mr. Cilio responded, “I have a lawyer, but I don’t know if I can get ahold of him right now.” Detective lorio then asked Mr. Cil-io why he needed a lawyer, because “[y]ou don’t even know what we’re going to talk about.” Thereafter, Mr. Cilio stated that it depended on “what this is all about, whether I’m going to answer any questions without my lawyer.”
*355 Mr. Cilio argues that his request for an attorney was unequivocal, and therefore, the detectives should have ended the custodial interrogation at this point. We conclude that Mr. Cillo’s request for an attorney was not an unequivocal request for counsel. See Davis v. United States, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) (holding that the appellant’s statement, “maybe I should talk to a lawyer,” was not a clear request for counsel); Long v. State, 517 So.2d 664 (Fla.1987) (holding that the statement, “I think I might need an attorney” was an equivocal request for counsel), overruled on other grounds, State v. Owen, 696 So.2d 715 (Fla.1997) (“If the statement is ambiguous or equivocal, then the police have no duty to clarify the suspect’s intent, and they may proceed with the interrogation.”).
However, even if Mr. Cillo’s statement was an unequivocal request for counsel, the detectives were not required to terminate the interview because Mr. Cilio was not being subjected to custodial interrogation. See Edwards v. Arizona, 451 U.S. 477, 485-486, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) (holding that absent custodial interrogation, there is no infringement of the Fifth Amendment right to have counsel present even where a suspect requests an attorney, and therefore, there would be no occasion to determine whether there had been a valid waiver of this right).
We agree with the trial court that Mr. Cilio was not in custody and was therefore not subject to custodial interrogation under Edwards. In determining whether a person is in custody for purposes of Miranda, the inquiry is whether the person was taken into custody or significantly deprived of his freedom of action. California v. Beheler, 463 U.S. 1121, 1123, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983). A person is not considered to be in custody merely because the questioning took place at the police station ■ or the questioned person is one whom the police suspect. Id. at 1125,103 S.Ct. 3517.
In Ramirez v. State, 739 So.2d 568, 574 (Fla.1999), the Florida Supreme Court adopted the following four-factor test to determine whether a person is in custody:
(1) the manner in which police summon the suspect for questioning; (2) the purpose, place, and manner of the interrogation; (3) the extent to which the suspect is confronted with evidence of his or her guilt; (4) whether the suspect is informed that he or she is free to leave the place of questioning.
Here, Detective lorio testified that Mr. Cilio went to the sheriffs office voluntarily. Mr. Cilio was never told that he had to go to the sheriffs office, and he never indicated that he did not want to go. During the subsequent interview, Detective lorio asked Mr. Cilio, “You voluntarily come down here with us today?” Mr. Cilio responded in the affirmative. Therefore, the manner in which the detectives summoned Mr. Cilio for questioning did not suggest that he was “significantly deprived of his freedom of action.” Beheler, 463 U.S. at 1123, 103 S.Ct. 3517. See Bedoya v. State, 779 So.2d 574, 579 (Fla. 5th DCA 2001) (holding that appellant was not in custody where police gave him a ride to police station for interview and had incriminating evidence against him).
Regarding the second factor in Ramirez, the questioning in the case at bar took place at the sheriffs office, but there was no evidence suggesting a coercive atmosphere during the interview. Mr. Cillo’s interview was recorded on video. This panel observed the videotaped interview with varying reactions. The videotape is of excellent quality, which is probably in part due to the depicted room. The room *356 was the size of a large walk-in closet. The only furniture in the room was three chairs, one of which Mr. Cilio occupied. Mr. Cillo’s chair was located in the corner farthest from the door. The atmosphere of the interview was conversational, and no threats or promises were made.
It appears that Mr. Cilio was at all times composed and reasonably responsive in his verbal answers. At no time did he give an appearance of being intimidated or subdued by the presence of the detectives or the questions being asked. At one point during the interview, Detective lorio leaned towards Mr. Cilio with no visible response from Cilio. On occasions, Mr. Cilio stood up abruptly to retrieve an object from his pocket. There is no visible reaction on the part of either detective to this sudden movement by Mr. Cilio.
Additionally, neither detective raised their voice during the interview. At one point, Mr. Cilio began to yell, but after Detective lorio asked him to not “disrespect” him, Mr. Cilio calmed down. Consequently, the second factor outlined in Ramirez does not suggest that Mr. Cilio was in custody at the time of the interview.
We note that even if there had been evidence of a coercive atmosphere, the Supreme Court has concluded that a noncustodial situation is not converted to a custodial one simply because, in the absence of any formal arrest or restraint on freedom of movement, the interview took place in a coercive atmosphere. Beheler, 463 U.S. at 1124, 103 S.Ct. 3517. See Davis v. State, 698 So.2d 1182, 1188 (Fla.1997) (concluding that sole fact that police had warrant for appellant’s arrest at the time he went to the police station did not establish that he was in custody). Although Mr. Cilio claims that Detective Bang’s chair was blocking the door to the interview room, it appears from the video that it is not. The detectives were able to open and close the door without having to move the chair, and the chair was not moved in front of the door when the detective sat down. However, the detectives’ presence and position in the room could have been an obstruction to Mr. Cillo’s departure from the room.
In relation to the third Ramirez factor, Detective lorio did inform Mr. Cilio of the victim’s allegations. However, this factor standing alone does not support the conclusion that Mr. Cilio was in custody. See State v. Rodriguez, 785 So.2d 759, 761 (Fla. 3d DCA 2001) (holding that appellee was not in custody when he was questioned at the police station and confronted with incriminating recorded phone calls).
The fourth factor in Ramirez is whether the suspect is informed that he or she is free to leave the place of questioning. In the instant case, before the interview began, Detective lorio told Mr. Cilio that he was not under arrest and that he could leave at any time. Consequently, the final factor in Ramirez was not indicative of a custodial interrogation. See State v. Scott, 786 So.2d 606 (Fla. 5th DCA 2001) (concluding that appellee was not in custody even though police did not tell her she was free to leave where there was nothing in the record to suggest that her freedom of movement was curtailed in any manner). Additionally, later during the interview Detective lorio asked Mr. Cilio, 'You talking to us now voluntarily?” Mr. Cilio responded in the affirmative.
We conclude that a reasonable person placed in the same position would not believe that “his or her freedom of action was curtailed to a degree associated with actual arrest.” Ramirez, 739 So.2d at 573. Based on the totality of the circumstances, in light of the discretion vested in trial judges to weigh all facts in such interviews, we conclude that the State carried *357 its burden in establishing that the interview was not transformed into a custodial interrogation. Accordingly, we affirm Mr. Cillo’s judgments and sentences.
Affirmed.
COVINGTON, J., Concurs.
DAVIS, J., Dissents with opinion.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).