987 So.2d 708 (2008)
STATE of Florida, Appellant,
v.
Ross B. FISCHER, Appellee.
No. 5D07-1096.
District Court of Appeal of Florida, Fifth District.
June 13, 2008.
*709 Bill McCollum, Attorney General, Tallahassee, and Kristen L. Davenport, Assistant Attorney General, Daytona Beach, for Appellant.
Joseph J. Pappacoda, Fort Lauderdale, for Appellee.
SAWAYA, J.
The issue we must resolve is whether the trial court applied the correct law in determining that two law enforcement officers did not have probable cause to believe, based on their training and experience in the detection of illegal narcotics, that the substance they saw in open view on the seat inside Ross Fischer's vehicle was cocaine. The trial court appears to have held that cocaine cannot be distinguished from other white powdery substances and, therefore, concluded that the cocaine the law enforcement officers observed on the front seat of Ross Fischer's automobile must be suppressed. The trial court also suppressed the cocaine and other drugs discovered in Fischer's wallet after he was arrested. Because the trial court misapplied controlling law, we must reverse the order suppressing the drugs found in Fischer's car and on his person after he was arrested.
The issue we address emerges from application of the open view doctrine.[1] *710 Of the two categories of open view "factual situations" discussed in Ensor v. State, 403 So.2d 349, 352 (Fla.1981), the instant case falls within the "pre-intrusion" category, where a law enforcement officer is standing outside an automobile looking in and observes an item that he or she has probable cause to believe is associated with criminal activity. See Jones v. State, 648 So.2d 669, 676 (Fla.1994), cert. denied, 515 U.S. 1147, 115 S.Ct. 2588, 132 L.Ed.2d 836 (1995); see also State v. Jacoby, 907 So.2d 676, 680 (Fla. 2d DCA) (holding that items were properly seized when the officer saw them in "open view" and "had probable cause to associate the property with criminal activity"), review dismissed, 918 So.2d 292 (Fla.2005). In this situation, the courts have specifically held that once the law enforcement officers have probable cause, they may enter a vehicle on a public road without a warrant and seize the suspected item. See State v. Green, 943 So.2d 1004, 1006-07 (Fla. 2d DCA 2006) ("Once probable cause is established, the officers may search the vehicle. The warrantless search of Mr. Green's car was thus authorized once the officer saw the razor blade and white powdery residue through the window.") (footnote omitted); State v. Daniel, 622 So.2d 1344, 1345 (Fla. 3d DCA 1993) ("[W]here a moving vehicle is stopped on the public street by police and immobilized, as here, the law is well settled that the police need not obtain a search warrant to search the vehicle so long as there is probable cause for the search."); State v. Starkey, 559 So.2d 335, 339 (Fla. 1st DCA 1990) ("We understand from the holding in [California v.] Carney [,] [471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985),] that the police are now free to search any vehicle, any time, and any place (except when it is on residential property) simply because the police have probable cause to believe that the vehicle contains contraband or other evidence of a crime. It is our understanding that the Carney holding has eliminated any Fourth Amendment requirement for a warrant or showing of exigent circumstances.").
The facts reveal a proper case for application of the open view doctrine and the reason for our decision to reverse the suppression order. Adverting to the transcript of the suppression hearing, we discover that Fischer was stopped by Deputy Radecki for an improper tag.[2] Deputy *711 Radecki noticed that Fischer appeared very nervous and had a white substance under his nose. Deputy Radecki testified that he called for back-up because "I thought that he might have been hiding something along with the registration and the vehicle not matching up."
In response to the request for back-up, Deputy Lakey and Deputy Barker arrived at the scene. Radecki told Barker to keep his eyes on Fischer because he thought "something was going on." Barker approached Fischer and asked him to step out of his vehicle. As he did, and with the car door open, Barker saw on the black interior of the vehicle, in the location where Fischer was sitting, a white powder he identified as cocaine. Barker described it as "a white powder like substance kind of clumped up into several different pieces." He stated that the texture and appearance made him believe it was cocaine. Barker summoned Lakey, who saw the white powder and also identified it as cocaine. Barker performed a field test on the substance, which produced a positive result for cocaine. Fischer was arrested, and a search of his person uncovered cocaine and oxycontin pills in his wallet. Lakey stated that he read Fischer his Miranda warnings shortly after he was arrested and that Fischer acknowledged his rights and freely spoke to him about the drugs found on his person. Fischer told the deputy that he had spent $300 for the cocaine and $800 for the oxycontin pills. Fischer was subsequently charged with possession of cocaine.
Fischer filed a motion to suppress the drugs, which the trial court granted. The specific basis of the trial court's ruling is its finding that the two deputies did not have probable cause to believe that the white powder they saw was cocaine because law enforcement officers, despite their training and experience in illegal drug detection, simply cannot distinguish cocaine from any other white powdery substance. In announcing its ruling, the trial court stated:
First of allwell, the critical issue is simply this. Did observing that white powder on the driver's seat give Deputy Barker and Deputy Lakey probable cause to seize it. And as [defense counsel] argued, was its status as contraband readily apparent from visual observation.
Deputy Lakey has significant training and Deputy Barker also has training and experience, four years Tallahassee Police Department and about a year, year and a half with Osceola. Deputy Lakey has numerous schools in narcotics identification, was a narcotics officer and teaches narcotics identification, and says he could see that and tell it was cocaine.
The problem with this case in the view of the court is it's a white powder, it's a white chemical powder; is it readily apparent that the substance is cocaine or a controlled substance?
....
... [I]n the court's view, cocaine is different than cannabis. In cannabis, an officer with training and experience can identify because it's got a unique look. Cocaine is just too similar to too many other white powders to, by itself, in the *712 court's view, upon view, particular[ly] of the small amount that was seen in this case, be readily apparent to even a trained officer as cocaine.
For the reasons that follow, we conclude that this ruling is erroneous as a matter of law.
In order to establish probable cause, "[a] police officer does not have to `know' that a certain item is contraband." State v. Hafer, 773 So.2d 1223, 1225 (Fla. 4th DCA 2000); see also State v. Walker, 729 So.2d 463, 464 (Fla. 2d DCA 1999) ("`In determining whether the incriminating nature of the evidence is immediately apparent, police are not required to know that an item is contraband.'" (quoting State v. Futch, 715 So.2d 992, 993 (Fla. 2d DCA 1998))). Rather, it is enough that "the facts available to the officer would lead a reasonable man of caution to believe that certain items may be contraband." Walker, 729 So.2d at 464 (citing Futch, 715 So.2d at 993). These facts may include not only the appearance of the suspected contraband, but also all of the surrounding circumstances.
Based on an officer's training and experience, the incriminating nature of a substance in open view may be determined by the officer's visual observation and identification of the substance. Walker, 729 So.2d at 464-65; Futch, 715 So.2d at 993-94; Sanchez v. State, 712 So.2d 1152 (Fla. 5th DCA 1998); Baggett v. State, 494 So.2d 221, 222 (Fla. 1st DCA 1986) ("Officer Fulford has been a state trooper for eight years and during that time was involved in numerous narcotic arrests. Thus, to his trained eye he had sufficient facts to `warrant a man of reasonable caution in the belief,' Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925), that the item he saw was evidence of a crime."); see also State v. Wynn, 948 So.2d 945, 947 (Fla. 5th DCA 2007); Vitale v. State, 946 So.2d 1220, 1221 (Fla. 4th DCA 2007) ("Based upon their training and experience, the officers believed the substance to be cocaine."); Houston v. State, 925 So.2d 404, 408 (Fla. 5th DCA 2006) ("Based on his training and experience, Dotson reasonably believed this powder to be cocaine and thus had probable cause for an arrest or seizure."); Beard v. State, 548 So.2d 675 (Fla. 5th DCA 1989).
In Sanchez, for example, the defendant was stopped for a traffic violation and the officer noticed a plastic bag with a white substance in it that the officer believed was cocaine. The officer tested the substance, and it tested positive for cocaine. This court held:
Sanchez principally argues on appeal that Corporal Waite's testimony fails to establish the incriminating nature of the object he saw between the seats. Waite testified, however, that he saw "a clear plastic bag containing what appeared to be smaller packets of a white powdery substance." He also testified that "[b]ased upon my training, previous arrests that I made, schools that I have attended, I recognized it, based upon the way it was packaged, and its appearance, it appeared to be cocaine." This testimony appears sufficiently detailed to establish that Corporal Waite observed contraband in plain view.
Sanchez, 712 So.2d at 1154. Equally analogous are the decisions in Walker and Futch.
Barker and Lakey testified about their training and experience in narcotics detection. Lakey explained that his training included "probably six different schools for narcotics identification. I was a narcotics officer, undercover officer, when I bought and sold cocaine as a narcotics officer. I also teach at Citizen's Academy Narcotics Identification." He explained that he was *713 an undercover narcotics officer for almost two years and that he had made several arrests of individuals who had cocaine in their possession. Barker revealed, "I've got five years patrol experience where I've made numerous drug arrests, including powder cocaine, as well as an eight hour regular drug identification course in the academy." Two well-trained and experienced deputies observed in open view what they each identified as cocaine on the seat of Fischer's car. Whether they knew for certain it was cocaine or whether it was within the realm of possibilities that the substance could have been something other than cocaine is not the standard; the proper standard is whether "the facts available to the officer would lead a reasonable man of caution to believe that certain items may be contraband." Walker, 729 So.2d at 464. Here, instead of basing its ruling on the credibility of the officers, or lack thereof, the trial court granted the motion based on a misapprehension of the applicable law.
The trial court's erroneous belief explains the final coda in the trial court's ruling, which provides that "if Deputy Lakey and Deputy Barker had seen and relied upon what Deputy Radecki had seen, that is, the shaking, the sweating, the white power around the nose, in conjunction with the white powder on the seat, the court would find that there was probable cause to seize the substance and find that there [was] probable cause to believe that the substance was cocaine." This finding raises the issue whether application of the fellow officer rule would prove the trial court's reasoning incorrect. However, given our resolution of the issue previously addressed, we need not venture that far. Accordingly, we reverse the order granting Fischer's motion to suppress and remand for further proceedings. If we have misconstrued the trial court's ruling, on remand, the trial court should render a revised ruling with detailed findings that clearly explain its decision.
REVERSED and REMANDED.
PALMER, C.J. and GRIFFIN, J., concur.
NOTES
[1] We are cognizant of the distinction between the open view and the plain view doctrines as defined in Ensor v. State, 403 So.2d 349 (Fla. 1981). The trial court improperly applied the plain view doctrine to reach its conclusion. Nevertheless, the issue the trial court was confronted with and which we must resolve whether the law enforcement officers had probable cause to believe the powder they observed was cocaineis relevant under either doctrine. In the context of the plain view doctrine, the courts require that the illegal nature of the item be "immediately apparent" to the officers, which simply means that the officers must have had probable cause to believe the item was contraband or associated with criminal activity. See Jones v. State, 648 So.2d 669, 678 (Fla.1994) ("This "immediately apparent' requirement is another way of saying that at the time police view the object to be seized, they must have probable cause to believe that the object is contraband or evidence of a crime."); Davis v. State, 834 So.2d 322, 327 (Fla. 5th DCA 2003) (holding that in order to satisfy the immediately apparent requirement of the plain view doctrine, "the police must have probable cause to associate the item with criminal activity").
[2] A law enforcement officer may properly stop a vehicle displaying an improper tag. See Gomez v. State, 748 So.2d 352, 352-53 (Fla. 3d DCA 1999) ("A review of the record shows that the trial court properly denied the defendant's motion to suppress the cocaine seized. Regardless of the individual officer's motivation, the traffic stop was lawful because the officer had probable cause to believe that the defendant had violated the traffic code by driving a vehicle with an expired temporary tag."), review dismissed, 762 So.2d 916 (Fla.2000); State v. Eubanks, 609 So.2d 107, 110 (Fla. 4th DCA 1992) ("[A] traffic stop based on an expired tag is permissible...."); State v. S.P., 580 So.2d 216, 217 (Fla. 4th DCA) ("Discovery that the tag did not match the vehicle justified a stop to seek an explanation for the discrepancy."), review denied, 592 So.2d 682 (Fla.1991); Heller v. State, 576 So.2d 398 (Fla. 5th DCA 1991); see also State v. Kindle, 782 So.2d 971 (Fla. 5th DCA 2001) (holding that stop of vehicle for inoperative trailer lights and missing tag was clearly lawful).