NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

JAMES YOUNG,                                    )
a/k/a JAMES MARQUEZ YOUNG,                      )
                                               )
      Appellant,                           )
                                               )
v.                                             )     Case No. 2D15-606
                                               )
STATE OF FLORIDA,                              )
                                               )
      Appellee.                            )
_____ )

Opinion filed October 14, 2016.

Appeal from the Circuit Court for
Hillsborough County; Kimberly K.
Fernandez, Judge.

Leon H. Jones of LHJ│LAW, Tampa, for
Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Gillian N. Leytham,
Assistant Attorney General, Tampa, for
Appellee.


VILLANTI, Chief Judge.

         James Young appeals his convictions and sentences for felon in

possession of a firearm; possession of cannabis; possession of cannabis with intent to

sell, manufacture, or deliver; and possession of drug paraphernalia.  In this appeal,

Young contends the trial court erred by denying his dispositive motion to suppress

evidence. Because the contraband seized from the garage and bedroom closet was discovered in plain view by firefighters who were lawfully carrying out their official duties, the trial court correctly refused to suppress that evidence. However, because the guns and cash were seized in the course of a subsequent warrantless search pursuant to an involuntary consent, that evidence should have been suppressed. We therefore affirm in part, reverse in part, and remand for further proceedings.

Firefighters and police officers responded to a small fire at Young's house. Upon their arrival, they found Young's garage door open, and from outside the house first responders saw several items of drug paraphernalia on a table inside the garage. The first firefighter entered the house, found the source of the fire, and extinguished it. He then conducted a required administrative sweep to ensure that no other areas of the house were burning or smoldering. After conducting that sweep and finding no other cause for concern, the firefighter left the house through the garage. While in the garage, he again saw the items of drug paraphernalia in closer proximity, and he pointed out the illicit items to a police officer who had responded to the fire call.

The firefighter then "reswept" the house, noticed an open closet door in the bedroom in which the fire had been extinguished, and observed an open cooler filled with marijuana on the closet floor. The firefighter acknowledged that he did not know how or when the cooler was opened. One of the police officers testified that a fire chief came up to her at the scene and told her to follow him inside the house, at which point the fire chief led the officer to the cooler full of marijuana. Drug investigators were called in, and they too entered the house to inspect the cooler. Young and the other occupant, his girlfriend, were detained by the police, and they gave consent to search

the house during this detention.  Having obtained what they believed to be a voluntary consent to search, the officers did not attempt to obtain a search warrant even though they had time to do so and were not concerned with evidence destruction.  Further searches of the garage and bedroom revealed guns and cash.

Young moved to suppress the marijuana, paraphernalia, guns, and cash on the grounds that the searches prior to his consent were unauthorized and that the subsequent warrantless searches were based upon involuntary consent.  However, the trial court found that even though Young's consent to search was involuntary, the items seized during the administrative search were lawfully seized under the plain view doctrine.  The trial court also concluded that the items seized following Young's involuntary consent were nevertheless admissible under the inevitable discovery doctrine because the police had a legally sufficient basis to search the house after seeing the contraband in plain view.  This latter finding was specifically premised on the determination that the police had a sufficient basis to get a warrant to search the rest of the house after seeing the paraphernalia in the garage and the marijuana in the cooler.  Based on these findings, the trial court denied the motion to suppress.  Young then pleaded no contest to all of the charges, reserving his right to appeal the denial of his dispositive motion to suppress.

On appeal, Young argues that the trial court erred when it denied his motion to suppress the paraphernalia on and around the table in the garage, the marijuana in the cooler, and the guns and cash found by the police after Young was detained.  In reviewing the trial court's denial of the motion to suppress, this court uses a dual standard, deferring to the trial court's findings of fact that are supported by

competent substantial evidence but reviewing de novo the court's application of the law to the facts. See Cillo v. State, 849 So. 2d 353, 354 (Fla. 2d DCA 2003).

Here, the trial court justified its denial of Young's motion to suppress the contraband seized from the garage and from the cooler under the plain view doctrine. That doctrine provides that evidence in plain view can be seized without a warrant if (1) the officers are in a place that they have a lawful right to be, (2) the incriminating nature of the evidence is immediately apparent, and (3) the officers have a lawful right of access to the object seized. State v. Walker, 729 So. 2d 463, 464 (Fla. 2d DCA 1999). The trial court justified its refusal to suppress the guns and cash under the inevitable discovery doctrine. "The inevitable discovery doctrine allows evidence obtained as the result of unconstitutional police procedure to be admitted if the evidence would ultimately have been discovered by legal means." Hatcher v. State, 834 So. 2d 314, 317-18 (Fla. 5th DCA 2003).

As to the contraband in the garage and the closet, the trial court properly ruled that it was validly seized because it was in plain view of the firefighters as they were leaving the house and of the police officers who entered the garage at the request of fire personnel. The first responders who entered the house were validly inside a constitutionally protected area due to the exigency of the fire. See Michigan v. Tyler, 436 U.S. 499, 509 (1978). While they were inside the house conducting a required administrative sweep, they were authorized to seize criminal evidence in plain view. See id.; see also Michigan v. Clifford, 464 U.S. 287, 294 (1984) ("If evidence of criminal activity is discovered during the course of a valid administrative search, it may be seized under the 'plain view' doctrine.").

- 4 -

Our analysis is not changed by the fact that the firefighter left the house through the garage to find a police officer to further examine the paraphernalia before it was actually seized. See Davis v. State, 834 So. 2d 322, 327 (Fla. 5th DCA 2003) ("Summoning other officers to the scene a reasonable time after entry is made to further investigate is permissible as long as the investigation is considered one continuous episode."); see also State v. Craycraft, 704 So. 2d 593, 593 (Fla. 4th DCA 1997) (finding the warrantless seizure of evidence after the expiration of the exigency was proper when one set of officers lawfully entered a home without a warrant, observed marijuana and paraphernalia while inside the residence, and left one officer on the scene while a second set of narcotics officers were dispatched to search the residence, and reasoning that "[b]ecause the road patrol officers could have legally seized the evidence at that time, the narcotics officers did not need a warrant to continue to exercise the police function which the road patrol officers had begun").[1] This same reasoning applies to the marijuana in the cooler because the trial court found that it was discovered in plain view by the firefighters as they were conducting an administrative sweep of the residence.[2] Thus, the trial court properly denied the portion of Young's

_____

[1]Because we find that the paraphernalia was validly seized pursuant to the plain view exception, we need not discuss Young's argument concerning "open view." See Ensor v. State, 403 So. 2d 349, 352-53 (Fla. 1981) (holding that the open view doctrine applies and a warrant is required to seize evidence when a police officer located outside the constitutionally protected area sees contraband inside a constitutionally protected area).

[2]While the trial court noted that the first firefighter did not know who had removed the lid from the cooler, the trial court implicitly rejected Young's testimony that the cooler in the closet had a lid on it when the court explicitly found that the marijuana in the cooler was in plain view and was "inadvertently discovered [by firefighters] in [Young's] bedroom closet while conducting their routine safety procedures." In reaching

- 5 -

motion to suppress directed to the evidence obtained from the garage and the cooler in the bedroom closet.

However, the guns and cash found pursuant to the postdetention search should have been suppressed because the inevitable discovery doctrine does not apply to the facts here. The trial court reasoned that the inevitable discovery doctrine applied because the police had a sufficient basis to obtain a search warrant based on the evidence found in plain view. The trial court cited Rodriguez v. State, 129 So. 3d 1135 (Fla. 3d DCA 2013), for the proposition that the police did not have to be in the process of obtaining a warrant for the inevitable discovery doctrine to apply. However, the supreme court later reversed Rodriguez and explicitly found that "permitting warrantless searches without the prosecution demonstrating that the police were in pursuit of a warrant is not a proper application of the inevitable discovery rule." Rodriguez v. State, 187 So. 3d 841, 849 (Fla. 2015).

Here, the officers readily admitted they had not endeavored to obtain a search warrant at the time they searched Young's house. Further, the State cannot rely on Young's alleged consent to the search because the trial court found that consent to be involuntary—a finding that is binding on this court. See Cillo, 849 So. 2d at 354. Moreover, the State was unable to show any exigency that would have allowed another search of Young's house after he and his girlfriend were detained. Therefore, because the guns and cash were seized pursuant to an unlawful search, the trial court erred when it did not suppress this evidence.

---

our decision, we must defer to the trial court's findings of fact. See Cillo, 849 So. 2d at 354.

Accordingly, on the authority of the supreme court's decision in <u>Rodriguez</u>, we hold that the trial court erred in denying Young's motion to suppress the guns and cash seized during the illegal search of Young's house. This conclusion requires us to reverse Young's conviction for felon in possession of a firearm and remand for discharge on that count. As to Young's conviction for possession of cannabis with intent to sell, manufacture, or deliver, we also reverse. On remand, the State may proceed with this charge if it can do so in the absence of the cash as evidence. Finally, because the trial court properly denied Young's motion as to the paraphernalia in the garage and the marijuana in the cooler, we affirm those convictions. However, on remand, Young should be permitted to file a motion seeking to withdraw his pleas to those charges if he can allege and prove that his decision to enter those pleas was affected by the trial court's improper ruling on the other portions of his motion to suppress. <u>See</u> <u>Ruilova v. State</u>, 125 So. 3d 991, 993 (Fla. 2d DCA 2013).

Affirmed in part, reversed in part, and remanded for further proceedings.


CRENSHAW and SALARIO, JJ., Concur.