NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

STATE OF FLORIDA,                         )
                                          )
                Appellant,                )
                                          )
v.                                        )          Case No. 2D15-3682
                                          )
DAMIEN TREMAINE ROSS,                     )
                                          )
                Appellee.                 )
                                          )
_____ )

Opinion filed December 9, 2016.

Appeal from the Circuit Court for Manatee
County; Susan B. Maulucci, Judge.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Johnny T. Salgado,
Assistant Attorney General, Tampa, for
Appellant.

Brett D. McIntosh of McIntosh Law,
Sarasota, for Appellee.


SALARIO, Judge.

        This is an appeal by the State of an order suppressing evidence on

grounds that it was obtained in violation of the Fourth Amendment.  Damien Ross is

charged with possession of more than twenty-eight and less than 200 grams of cocaine,

fleeing and eluding an officer, and reckless driving.  The cocaine was discovered during

warrantless searches of the home where Mr. Ross was arrested and the car he was

driving on the night of his arrest.  We affirm without comment as to the search of the home.  We reverse as to the search of the car, however, because a warrantless search became authorized when the police saw cocaine in plain view in the vehicle.[1]

The police encountered Mr. Ross while investigating a noise complaint at an apartment complex in the middle of the night.  Two police officers saw him asleep in the driver's seat of his car while music was blasting from the car's speakers.  An officer attempted to wake him by rapping on the window and identifying himself.  After several minutes of this, Mr. Ross finally woke up.  He rolled the window down slightly, told the officers "fuck that," and then drove off.  The officers followed him as he drove with no headlights at speeds in excess of eighty miles an hour.  The officers turned on the lights and sirens, but he refused to stop.  Apparently instructed not to continue the chase, they lost sight of Mr. Ross when he made a left turn against a red light.

The officers went to an address matching the car's registration but then got a radio call reporting that a man who looked like Mr. Ross had run into another home nearby.  When they arrived at that address, they found Mr. Ross's car parked on the grass lawn of the home.  The officers went to the front and side doors of the house to look for Mr. Ross when two residents, a woman and her uncle, opened the doors.  The officers went through the house, knocking on doors and calling for people to come out of the rooms.  Mr. Ross answered a knock on a bedroom door and was arrested on the spot.

---

[1]The quantities of cocaine found in the car and the house appear to be the sole basis of the possession charge.  The trial court did not make any findings as to whether the quantity of cocaine found only in the car was sufficient to support the total quantity of cocaine charged.  We make no determination on that issue either, other than to note that it is a question that may need to be resolved on remand.

During the investigation following the arrest, Sergeant Shannon Seymour arrived at the scene. In anticipation of having Mr. Ross's car towed, Sergeant Seymour approached the vehicle to see if it had been damaged. He looked through a window and saw a half of a crack cocaine cookie—a circular piece of crack cocaine—on the floor by the front passenger's seat. Without obtaining a warrant, the police thereafter conducted a search of the inside of the car. That search uncovered a full crack cocaine cookie and some powder cocaine in addition to the half-cookie of crack cocaine Sergeant Seymour viewed through the window.

Mr. Ross moved to suppress the evidence found in the car, asserting that the warrantless search of the car violated the Fourth Amendment. The State argued that Sergeant Seymour's observation of crack cocaine from outside the vehicle justified a warrantless search. The trial court rejected that contention and granted the motion to suppress. We review that decision under a mixed standard: the trial court's findings of historical facts are reviewed for competent substantial evidence, and its conclusions of law and application of the law to the facts are reviewed de novo. See State v. K.S., 28 So. 3d 985, 987 (Fla. 2d DCA 2010); Cillo v. State, 849 So. 2d 353, 354 (Fla. 2d DCA 2003).

Applying the law to the historical facts, we conclude that the search of Mr. Ross's car was authorized under the automobile exception to the Fourth Amendment's warrant requirement. Generally speaking, that exception permits a warrantless search of a readily mobile vehicle when the police have probable cause to believe that it contains contraband. See Pennsylvania v. Labron, 518 U.S. 938, 940 (1996) (citing California v. Carney, 471 U.S. 386, 393 (1985)). In State v. Green, 943 So. 2d 1004,

1007 (Fla. 2d DCA 2006), our court held that the exception applies where, as here, police observe drugs in plain view in a parked car after having arrested the owner.

The defendant in Green was arrested for gambling at an apartment complex, and a search incident to the arrest turned up keys to a Ford Taurus, which the police seized. Id. at 1005. The police then found the car, shined a flashlight into the windows, and observed a razor blade with white residue on the center console. Id. The police used the keys they seized to open the vehicle, which they then searched. The search resulted in the seizure of drugs and paraphernalia. Id. Upon the defendant's motion, the trial court suppressed the evidence because the police searched the car without a warrant. Id.

Reversing the suppression order, we held that the automobile exception authorized the warrantless search. Id. at 1006-07. We rejected the defendant's contention that the exception applied only when exigent circumstances were present—a finding that would have been unlikely when at the time of the search the car was parked, the owner arrested, and the keys in the possession of police—and explained that the warrantless search was authorized once the police developed probable cause. Id. at 1006 ("[T]he justification to conduct such a warrantless search does not vanish once the car has been immobilized." (quoting Michigan v. Thomas, 458 U.S. 259, 261 (1982))). Because the police had the requisite probable cause when they observed drug paraphernalia in the car, the subsequent warrantless search of the automobile did not violate the Fourth Amendment. See id. at 1005-06.

This case is not different from Green in any respect that matters. Mr. Ross was arrested after fleeing and eluding police officers and hiding in a home. After

his arrest, a police officer looked through the window of his car and saw crack cocaine in plain view. Sergeant Seymour's lawful observation of illegal drugs in the car gave the police probable cause to believe that the car contained evidence of a crime.[2] The warrantless search of the car was thus authorized by the automobile exception. Green, 943 So. 2d at 1006-07; see also State v. Gardner, 72 So. 3d 218, 220-21 (Fla. 2d DCA 2011) (reversing order suppressing evidence and finding probable cause to conduct warrantless search of a parked automobile for evidence of a shooting where police had lawfully arrested the vehicle's owner for the shooting two hours earlier); State v. Fischer, 987 So. 2d 708, 711-13 (Fla. 5th DCA 2008) (holding that warrantless search of car was authorized where police observed white powder that appeared to be cocaine in open view therein).

The trial court nonetheless suppressed the evidence obtained during the search based, at least in part, on a belief that "something more" must have happened between the time Mr. Ross was arrested and the time Sergeant Seymour saw the crack

---

[2]Although the lawfulness under the Fourth Amendment of Sergeant Seymour's observation of the drugs was treated by the trial court—and is treated by the State on appeal—under the plain view doctrine, it is at least possible on these facts that the open view doctrine actually applies here. See State v. Rickard, 420 So. 2d 303, 304-06 (Fla. 1982) (distinguishing between plain view and open view based on whether observation occurred from a constitutionally protected area, based on the defendant's reasonable expectation of privacy). Assuming that the plain view doctrine applies, Sergeant Seymour's observation of the interior of the car from the yard was constitutionally permissible because it was undisputed that he was legitimately in the yard as part of an investigation, the crack cocaine cookie was in plain view, and its illegal character was, on the testimony presented, immediately apparent. See Young v. State, 41 Fla. L. Weekly D2352 (Fla. 2d DCA Oct. 14, 2016). Assuming instead that the constitutionally protected area was limited to the car itself rather than the property on which the officer stood, the same result would obtain under the open view doctrine. See Adoue v. State, 408 So. 2d 567, 571 (Fla. 1981) ("[W]hen the officers looked through the window of the airplane and saw marijuana, they stood in a nonconstitutionally protected area where they had a lawful right to be.")

cookie in the car. That belief appears to have been founded on testimony from the arresting officers that the car windows were closed at the time of the arrest and testimony from Sergeant Seymour that at least some of the windows may have been open when he arrived at the scene. The trial court, however, made no findings (1) that described what the "something more" was or could have been; (2) that were at odds with Sergeant Seymour's testimony that a half-cookie of crack cocaine was in plain view; or (3) that the testimony of Sergeant Seymour or any of the officers involved lacked credibility.

We are left, therefore, with a mere suspicion that "something" happened between the time of the arrest and the time when Sergeant Seymour saw the crack cookie. That suspicion cannot support the suppression order for two reasons.

First, the trial court credited Sergeant Seymour's testimony that he saw the half-cookie of crack cocaine in plain view on the front passenger-side floor of the car. Although it might be possible that an unidentified person rolled the windows down between the initial arrest and Sergeant Seymour's observation of the drugs on the car floor, that unestablished possibility is not determinative at a suppression hearing because no competent substantial evidence to that effect was presented. See Fla. R. Crim. P. 3.190(g)(3) ("If the court hears the motion [to suppress] on its merits, the defendant shall present evidence supporting the defendant's position and the State may offer rebuttal evidence."). Nor was such a fact alleged in the motion to suppress such that the State was required to rebut it. The only evidence presented was that the officer saw the cocaine from outside the car. Taking the evidence in that way, the crack cookie

- 6 -

was openly visible, and, as a result, the police had probable cause to believe that they would find contraband inside Mr. Ross's car.

Second, the officer who had the initial encounter with Ross at the apartment complex testified without contradiction that he could see into the car through the rolled-up windows. Thus, under the undisputed facts of this case, whether the windows were up or down when Sergeant Seymour saw the cocaine has no direct bearing on any factual question regarding whether he saw it. See generally State v. Navarro, 464 So. 2d 137, 140 (Fla. 3d DCA 1985) (en banc) ("A trial court's findings must be accepted by the appellate court if there is evidence to support the findings. This rule is, by definition, applicable only to a case in which the evidence supports the trial court's findings and is not applicable to a case in which the evidence does not support the findings."). The trial court's reliance on its suspicion that the windows were opened between the time of the arrest and the time of Sergeant Seymour's observation was not a basis upon which it could deviate from its conclusions that the officer's testimony was credible and that the crack cocaine was in plain view. That gave the police probable cause to conduct a warrantless search under the automobile exception.

For these reasons, although we affirm that portion of the trial court's order suppressing the evidence found inside the home, we reverse that portion of the order suppressing the evidence found inside the car. We remand the case to the trial court for further proceedings consistent with this opinion.

Affirmed in part; reversed in part; remanded.

KELLY and BADALAMENTI, JJ., Concur.