NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

TRUMAINE MOODY,                          )
                                         )
            Appellant,                   )
                                         )
v.                                       )        Case No. 2D16-5533
                                         )
STATE OF FLORIDA,                        )
                                         )
            Appellee.                    )
                                         )
_____)

Opinion filed July 25, 2018.

Appeal from the Circuit Court for Hendry
County; James D. Sloan, Judge.

Howard L. Dimmig, II, Public Defender, and
Judith Ellis, Assistant Public Defender,
Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Andrew Tetreault,
Assistant Attorney General, Tampa, for
Appellee.

KHOUZAM, Judge.

Following the denial of his dispositive motion to suppress and his entry of

a no contest plea, Trumaine Moody appeals his judgment and sentence for possession

of cocaine in case 16-CF-81. He also challenges the revocations of his probation and

sentences in cases 12-CF-516, 12-CF-518, and 12-CF-520. We affirm without

comment the revocations and resulting sentences in those three cases. However,

because the State failed to show by clear and convincing evidence that there was an unequivocal break between the initial illegal stop and Mr. Moody's alleged consent to search, we reverse and vacate Mr. Moody's conviction and sentence for possession of cocaine in case 16-CF-81.

An anonymous tipster flagged down a deputy of the Hendry County Sheriff's Office to tell him that a black male wearing a red, yellow, and black jacket was carrying a gun and standing outside a convenience store. The deputy called another deputy, and they met in front of the convenience store, where they observed Mr. Moody, a black male fitting the tipster's description. Upon noticing the patrol cars, Mr. Moody stuck his hands in his pockets and walked hunched over into the store. The deputy followed Mr. Moody into the store, where he stopped and patted him down in search of a weapon. After not finding a weapon, the deputy explained to Mr. Moody why he had stopped him. The deputy then asked Mr. Moody if he had anything in his pockets that he "shouldn't have." When Mr. Moody said "no," the deputy asked if he could search Mr. Moody's pockets. Mr. Moody replied, "I ain't got nothing, yeah, go ahead." The deputy searched Moody's pockets and found cocaine. The deputy testified that "maybe a minute" elapsed between the first stop and frisk and the subsequent search of the pockets.

Mr. Moody moved to suppress the cocaine. He argued that because the initial stop was unlawful, he did not voluntarily consent but rather acquiesced to the deputy's request to search his pockets. The trial court, however, denied Mr. Moody's motion. The trial court found that even though the first stop and frisk was illegal as there was "nothing . . . that would support any kind of search at that point," the trial court

concluded that Mr. Moody's consent to search was voluntary and was not "fruit of the poisonous tree."[1]  The trial court reasoned that Mr. Moody's consent to the second search was voluntary because the deputy's conversation with Mr. Moody was sufficient to dispel Mr. Moody's "initial fear [of] the officer."  We disagree.

In reviewing a trial court's ruling on a motion to suppress, "this court uses a dual standard."  Young v. State, 207 So. 3d 267, 269 (Fla. 2d DCA 2016).  That is, while we defer to the trial court's findings of fact that are supported by competent substantial evidence, we review de novo the trial court's "application of the law to the facts."  Id. (citing Cillo v. State, 849 So. 2d 353, 354 (Fla. 2d DCA 2003)).

The voluntariness of a defendant's consent is determined from the totality of circumstances.  Hardin v. State, 18 So. 3d 1246, 1248 (Fla. 2d DCA 2009) (citing Kutzorik v. State, 891 So. 2d 645, 647 (Fla. 2d DCA 2005)).  "[W]hen consent is obtained after illegal police activity . . . the unlawful police action presumptively taints and renders involuntary any consent to search."  Ingraham v. State, 811 So. 2d 770, 774 (Fla. 2d DCA 2002) (alteration in original) (quoting Connor v. State, 803 So. 2d 598, 609 (Fla. 2001)).  The State may rebut this presumption of involuntariness "only if there is clear and convincing proof of an unequivocal break in the chain of illegality sufficient to dissipate the taint of prior official illegal action."[2]  Norman v. State, 379 So. 2d 643,

---

[1]The State does not challenge the trial court's determination that the initial stop of Mr. Moody was unlawful.

[2]"Although the State normally must prove voluntariness of consent only by a preponderance of the evidence, '[w]here there is an illegal detention or other illegal conduct on the part of the police, a consent will be found voluntary only if there is clear and convincing evidence that the consent was not a product of the illegal police action.' "  Ballenger v. State, 16 So. 3d 1022, 1025 (Fla. 2d DCA 2009) (alteration in original) (quoting Reynolds v. State, 592 So. 2d 1082, 1086 (Fla. 1992)).

647 (Fla. 1980). "[T]he taint may be dissipated by advice to the defendant of his right to refuse to consent so as to render the subsequent consent free and voluntary." State v. Boyd, 615 So. 2d 786, 790 (Fla. 2d DCA 1993). To determine whether the evidence was obtained by exploitation of the illegal stop or instead by means sufficiently distinguishable so as to purge the evidence of the primary taint, we take into account three factors: "(1) the time elapsed between the illegality and the acquisition of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct." State v. H.D., 113 So. 3d 917, 918 (Fla. 2d DCA 2013) (quoting State v. Frierson, 926 So. 2d 1139, 1143 (Fla. 2006)).

This court previously ruled on a case involving the denial of a motion to suppress with a nearly indistinguishable fact pattern. In Reed v. State, 577 So. 2d 1362 (Fla. 2d DCA 1991), police officers stopped two black men based on a radio dispatch that two black males involved in drug activity were believed to be carrying firearms in the area. Id. at 1363. The officers immediately advised the defendant that they were going to conduct a pat down for weapons. Id. After not finding any weapons on the defendant, one of the officers explained to the defendant why they were in the area. Id. The officer then informed the defendant of his right to refuse consent and asked the defendant if he could search his pockets. Id. The defendant responded that he would not mind, and the officer searched and found illegal drugs in the defendant's pocket. Id. This court reversed the denial of the motion to suppress, holding that "there was no unequivocal break between the illegal stop of the [defendant] and his consent to the search." Id. Accordingly, even though the officer advised the defendant of his right to

-4-

refuse consent, this court concluded that the defendant's consent was tainted by the illegal stop. Id.

Here, we conclude that the State did not show by clear and convincing evidence that there was an unequivocal break between the initial illegal stop and Mr. Moody's alleged consent to search. Like in Reed, the only intervening circumstances between the illegality and the acquisition of the evidence was the deputy's explanation as to why he had stopped Mr. Moody and the deputy's request to search Mr. Moody's pockets. Such facts do not sufficiently purge the taint of the prior official illegal action. See id. Nor does the brief amount of time—about one minute—remove that taint. And while we recognize that the official misconduct does not appear to be flagrant or driven by some unlawful purpose, the record is clear that the deputy did not attempt to dissipate the taint of the initial illegal stop in any way. The deputy simply exploited the initial unlawful stop and frisk by asking Mr. Moody if he had anything illegal on him and whether he could search his pockets. Indeed, unlike the officer's conduct in Reed, the deputy here failed to inform Mr. Moody that he was free to either refuse consent or leave prior to the search of his pockets. As such, because the State failed to clearly and convincingly show an unequivocal break in the chain of illegality sufficient to dissipate the taint of the prior official illegal action, the trial court erred in denying Mr. Moody's motion to suppress.

Therefore, we reverse the trial court's denial of Mr. Moody's motion to suppress and vacate his judgment and sentence in case 16-CF-81. We affirm in all other respects.

Affirmed in part, reversed in part, and vacated.

-5-

MORRIS and ROTHSTEIN-YOUAKIM, JJ., Concur.