IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

JOHNNY JAMES TIMS,

     Appellant,

v.

STATE OF FLORIDA,

     Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D15-2346

Opinion filed October 4, 2016.

An appeal from the Circuit Court for Escambia County.
Gary L. Bergosh, Judge.

Nancy A. Daniels, Public Defender, Steven L. Seliger, Assistant Public Defender, and William Pafford, Assistant Public Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, Trisha Meggs Pate, Assistant Attorney General, and Jillian H. Redding, Assistant Attorney General, Tallahassee, for Appellee.

WINSOR, J.

     Johnny James Tims responded violently when law enforcement officers sought to question him about domestic violence allegations. He pleaded no contest to three charges relating to that violent response, but he reserved the right to appeal the order denying his motion to suppress. In Tims's view, the officers had no right

to be where they were, so any evidence that Tims battered them, resisted with violence, or knocked equipment from an officer's hand must be suppressed as fruit of the poisonous tree. We reject that view and affirm.

## I.

Dispatched to address reports of domestic violence, two law enforcement officers headed to Tims's trailer home. As they arrived, Tims's girlfriend flagged them down and reported that Tims "had jumped on her." Carrying flashlights, the officers set off to investigate. One went to the trailer door; the other initially waited in the yard.[1]

Tims opened and shut his door several times, all while yelling things like "come back with a warrant," "no trespassing," and "private property." One officer instructed Tims to come outside to speak with them, but Tims continually refused. Although the record does not establish the precise timing, at some point one of the officers approached the door, flashlight still in hand. From the door's threshold, Tims reached out and slapped the officer's hand, knocking the flashlight to the ground. Tims then made a quick move towards one of the officers before trying to move back into his trailer. The officers stepped into the trailer to place Tims under arrest—not for the domestic violence, but for his striking at the officer. Just inside the threshold, Tims began resisting, shrugging his arms, and pushing himself off

---

[1] Because the State prevailed below, we interpret the evidence in a light most favorable to it. *See Brandin v. State*, 669 So. 2d 280, 282 (Fla. 1st DCA 1996).

the wall. Before the officers could handcuff him, Tims tried to bite one officer and tried to hit both with a closed fist. Ultimately, the officers placed Tims under arrest.

## II.

That night's events led to four criminal charges: Count I alleged resisting an officer with violence, in violation of section 843.01, Florida Statutes; Count II alleged battery upon an officer, in violation of sections 784.03 and 784.07(2)(b); Count III alleged depriving an officer of a means of protection (the flashlight), in violation of section 843.025; and Count IV alleged battery—for the underlying domestic violence that led the officers to Tims's home in the first place. The State dropped Count IV, meaning the three counts now at issue all stem from the altercation that began when Tims slapped at the officer's flashlight and ended with Tims handcuffed inside his home.

Tims moved to suppress all evidence supporting any of the remaining charges. He argued that the officers were not lawfully inside his home because (i) the officers had no warrant to enter, (ii) the reported domestic violence that led the officers to Tims's home was a misdemeanor, and (iii) the victim was outside the home (so not in danger). In fact, Tims argued, the officers had no right even to remain outside his door—at least not once he made clear that he wanted them to leave.

3

The trial court denied the motion. After noting agreement with Tims that the misdemeanor domestic violence allegation did not allow warrantless entry into Tims's home, the judge found that everything changed the moment Tims struck the deputy's hand. After that, the judge concluded, the officers "had the right to go get him and they did."

III.

On appeal, the State maintains that the officers were lawfully present, both at the door and inside the home. According to the State, "there is no indication the officers knocked for an excessive period of time." And, the State argues, the officers lawfully entered the home because they had probable cause to arrest Tims for the felony assault. Tims, for his part, insists the officers' presence was unlawful, meaning everything they observed should be suppressed.[2]

Ultimately, we find it unnecessary to decide whether the officers were lawfully present. Either way, the trial court properly denied the motion. The exclusionary rule does not command suppression of evidence that Tims violently resisted arrest and accosted officers, lawfully present or not.

---

[2] Tims pleaded no contest to crimes that included as elements lawful action by officers. *See* § 843.01, Fla. Stat. (criminalizing resisting officers "in the lawful execution of any legal duty"); § 784.07(2), Fla. Stat. (classifying battery as a felony when committed against an officer "engaged in the lawful performance of his or her duties"). Because the State has not presented the argument, and because it would not affect the outcome here, we do not decide whether those pleas foreclose Tims's arguments that the officers acted unlawfully.

## A.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Although the federal constitution does not expressly command suppression of evidence unlawfully obtained, the United States Supreme Court established the exclusionary rule by decisional law. *See Herring v. United States*, 555 U.S. 135, 139 (2009).[3] By operating to exclude evidence obtained unlawfully, the exclusionary rule encourages officers to act within Fourth Amendment limits. That encouragement, in turn, protects the public from unlawful intrusions. *See Herring*, 555 U.S. at 139-40; *see also Utah v. Strieff*, 136 S. Ct. 2056 (2016) (exclusionary rule protects Fourth Amendment rights generally through deterrent effect); *State v. Dodd*, 419 So. 2d 333, 335 (Fla. 1982). Indeed, the deterrent effect is the exclusionary rule's sole justification; "the exclusionary rule is not an individual right," and it operates "only where it 'result[s] in appreciable deterrence.'" *Herring*, 555 U.S. at 141 (alteration in original) (quoting *United States v. Leon*, 468 U.S. 897, 909 (1984)); *see also State*

---

[3] Florida's Fourth Amendment analogue—Article I, section 12, of the Florida Constitution—likewise protects "[t]he right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures." That provision does explicitly preclude admission of "[a]rticles or information obtained in violation of this right," but only if it "would be inadmissible under decisions of the United States Supreme Court construing the 4th Amendment." Art. I, § 12, Fla. Const.; *see also G.M. v. State*, 19 So. 3d 973, 977 (Fla. 2009).

5

*v. Johnson*, 814 So. 2d 390, 394 (Fla. 2002) (application of rule "must be balanced against the desire to have fact-finders receive all relevant and probative evidence").

This court's decision in *Lee v. State*, 856 So. 2d 1133 (Fla. 1st DCA 2003), which Tims cites, illustrates the exclusionary rule's typical application. In *Lee*, officers entered a hotel room without a warrant, found drugs, and arrested the occupant. This court held that because the entry violated the Fourth Amendment, the evidence found inside the hotel room could not be used against the defendant. *Id.* at 1140; *see also Washington v. State*, 889 So. 2d 170 (Fla. 1st DCA 2004) (similar scenario). Application of the rule in cases like these would "deter illegal police conduct by denying the state the benefit of improperly obtained evidence." *Dodd*, 419 So. 2d at 335.

This case, however, is not the typical suppression case. The evidence at issue here does not relate to some earlier crime discovered while officers allegedly violated the Fourth Amendment; it relates to crimes Tims *committed* against officers while they allegedly violated the Fourth Amendment.[4] In this circumstance, suppressing evidence of these crimes would not serve the purposes underlying the exclusionary rule. "[T]he limited objective of the exclusionary rule

---

[4] Although the motion did not identify specific evidence—instead seeking to suppress "a) Evidence of any Resisting Officer with Violence," "b) Evidence of any Battery Upon a Leo," and "c) Evidence of any Depriving an Officer of Means of Protection or Communication"—the principal (if not sole) evidence presumably would have been the officers' testimony.

is to deter unlawful police conduct—not to provide citizens with a shield so as to afford an unfettered right to threaten or harm police officers in response to the illegality." *State v. Brocuglio*, 826 A.2d 145, 152 (Conn. 2003).

It is not enough to say, as Tims does, that officers could not have discovered evidence of his crimes without illegally entering his home. Obviously had the officers not been in his home, Tims could not have assaulted or resisted them in his home. And were they not by his door, Tims could not have swatted the flashlight from the officer's hand by his door. But it has never been the rule that courts must exclude all evidence that would have escaped discovery absent a Fourth Amendment violation. *Herring*, 555 U.S. at 141; *see also Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963) (rejecting "but for" test); *State v. Frierson*, 926 So. 2d 1139, 1143 (Fla. 2006). Quite the opposite: the exclusionary rule is a "last resort"—not a "first impulse." *Herring*, 555 U.S. at 140 (quoting *Hudson v. Michigan*, 547 U.S. 586, 591 (2006)). It applies only when it will yield appreciable deterrence—and only when the deterrence benefits outweigh the costs of exclusion. *Id.* at 141; *see also Strieff*, 136 S. Ct. at 2056. It does not apply here, where it would not appreciably deter illegal conduct, and where its costs would be too great.

In its usual operation, the exclusionary rule will deter officers from illegal searches and seizures because officers know that the products of those searches

7

typically will be useless. Officers will not illegally stop a vehicle looking for contraband, for example, knowing that contraband they find cannot support a prosecution. But it would be unreasonable (at best) to suppose that rejecting Tims's claims here would encourage officers' unlawful actions. We cannot imagine circumstances in which officers would unlawfully enter homes hoping they would themselves be accosted upon entry, leading to criminal charges against the accoster. *Cf. United States v. Pryor*, 32 F.3d 1192, 1196 (7th Cir. 1994) ("Police do not detain people hoping that they will commit new crimes in their presence; that is not a promising investigative technique, when illegal detention exposes the police to awards of damages."). We find no deterrent value in accepting Tims's claims.

Even assuming some minimal deterrent value in excluding evidence under these circumstances, the societal cost would far outweigh it. The problem with Tims's approach is obvious. "[E]xtending the fruits doctrine to immunize a defendant from arrest for new crimes gives a defendant an intolerable carte blanche to commit further criminal acts so long as they are sufficiently connected to the chain of causation started by the police misconduct." *United States v. Bailey*, 691 F.2d 1009, 1017 (11th Cir. 1982). By precluding evidence of battery on officers, the rule would all but invite such battery—perhaps even encouraging some to bait officers into unlawful entry. *Cf. id.* ("[S]ound policy reasons obviously argue that the law should discourage and deter the incentive on the part of potential arrestees

8

to forcibly resist arrest or to commit other new and separate crimes."). To be sure, Tims does not assert that he had the legal right to use violence against officers unlawfully present. *Cf. Morley v. State,* 362 So. 2d 1013, 1014 (Fla. 1st DCA 1978) (noting common-law right to resist illegal arrest abrogated by statute). But the practical difference between that and his suppression argument amounts to little. *See Pryor*, 32 F.3d at 1196 (noting defense to the crime and suppression of evidence of the crime "come to the same thing [because] to suppress the evidence would be to say that the suspect is indeed free to commit the crime"). After all, if a defendant batters officers inside a home, a conviction for that battery likely depends on the officers' testimony that they were battered. The societal costs of excluding evidence in this circumstance would simply be too great.

B.

The result we reach here is consistent with decisions from other Districts. In *State v. Clavette*, for example, the defendant was charged with trying to take a firearm from an officer, resisting with violence, and battery on an officer. 969 So. 2d 463 (Fla. 5th DCA 2007). The defendant sought to suppress related evidence, claiming the officers unlawfully entered his home. But the Fifth District found that even if the officers violated the Fourth Amendment by entering the home, suppression was not warranted because the defendant's "use of force was an independent act of misconduct." *Id.* at 467. Similarly, the defendant in *State v.*

9

*Freeney* sought to suppress evidence related to his charges for battery on an officer. 613 So. 2d 523 (Fla. 2d DCA 1993). The trial court granted the motion, finding the evidence "to be fruits of an illegal seizure," *id.* at 524-25, but the Second District reversed: "Even though the altercations between Mr. Freeney and the police may never have occurred 'but for' the stop, the evidence concerning the defendant's battery on the police officer . . . is not legally derivative for purposes of the exclusionary rule." *Id.* at 525; *see also State v. White*, 642 So. 2d 842, 844 (Fla. 4th DCA 1994) ("The commission of an independent crime during or after the execution of an illegal warrant may be charged, and if the evidence seized relates to the commission of that crime as opposed to the objects of the search warrant, suppression of such evidence should be denied.").

## C.

Finally, we have not overlooked *Faith v. State*, 45 So. 3d 932 (Fla. 1st DCA 2010), which Tims cited below. In *Faith*, an officer had arrested the defendant for giving a false name and birthdate—obstruction by disguise. *Id.* at 933. The officer then searched the defendant's purse and found drugs. *Id*. And at some point, the defendant resisted without violence after being handcuffed. *Id.* The trial court found the arrest to be illegal (because the defendant was not under arrest or lawfully detained when she provided false information), but it denied a motion to suppress evidence of the drugs—"and the behavior that formed the basis of the

10

resisting charge." *Id.* The State sought a remand to further demonstrate why the evidence should not be suppressed, noting that the earlier suppression hearing was "problematic." *Id.* at 934. This court rejected the State's request, finding no authority to allow the prosecution another opportunity to oppose suppression. *Id.*

The court's conclusion that the drugs should have been suppressed is consistent with settled law and inapplicable here. And the court's implicit conclusion that evidence of resisting without violence should have been suppressed—offered with no analysis—does not compel that result here. Even assuming it was a binding holding otherwise, it would not bind us here because these convictions are unquestionably more serious. Tims resisted *with* violence, battered officers, and separated an officer from his equipment. The trial court properly denied Tims's request to suppress evidence of his crimes.

AFFIRMED.

WINOKUR, J., CONCURS; WOLF, J., CONCURS IN RESULT.

11