FIRST DISTRICT COURT OF APPEAL
STATE OF FLORIDA

_____

No. 1D17-263
_____

MICHAEL CLAYTON,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

On appeal from the Circuit Court for Union County.
David P. Kreider, Judge.

August 1, 2018

WINOKUR, J.

Appellant, Michael Clayton, appeals his convictions and sentences for manufacturing cannabis, a third-degree felony, and possession of drug paraphernalia, a first-degree misdemeanor. §§ 893.13(1)(a)2., 893.147(1), Fla. Stat. Clayton argues that the trial court erred in denying his suppression motion. Because we find that the trial court erred in its application of the inevitable discovery doctrine and because Clayton reserved this matter as dispositive in his plea agreement, we reverse and vacate Clayton's judgment and sentences.

I.

During the fall of 2015, Union County Sheriff's Office Deputy John Whitehead received information from an anonymous source that Clayton was growing marijuana inside his residence. Deputy

Whitehead then received information from the Clay Electric Cooperative regarding the power usage in Clayton's home, which revealed that the power usage of Clayton's home was four times higher than the normal usage of a home of comparable size. Additionally, Deputy Whitehead had the power usage documents reviewed by individuals at the Drug Enforcement Agency. Deputy Whitehead concluded that Clayton was cultivating marijuana inside his residence.

Deputy Whitehead then went with others to Clayton's home to conduct a "knock and talk" investigation. Deputy Whitehead and his colleagues contacted Clayton outside in the yard, and obtained consent from Clayton to search the home. Clayton also signed a consent to search form. Afterwards, Clayton admitted to cultivating marijuana in his home and that he was the only individual residing in the residence. The subsequent search of Clayton's residence revealed two rooms set up with lighting and marijuana plants growing in various containers. Several electrical tools were also found, which were used to run fans and lighting and other aspects of indoor marijuana cultivation.

After the State charged Clayton with manufacturing and possession, Clayton moved to suppress the evidence found in the search on the ground that his consent to search was coerced. During the suppression hearing, Deputy Whitehead testified that he advised Clayton of the probable cause that he developed that Clayton was growing marijuana in his home. Regarding Clayton's consent to search, Deputy Whitehead testified as follows:

Initially, I just requested consent to search the residence, I told him, you know, based off the facts before us, I do believe that if we presented this to a judge that there would be enough probable cause for a judge to sign it; however, obviously, that would have to be taken to the state attorney and in the judge's hand. And told him if he cooperated with us, we'd cooperate with him and that I could assure him that on this date, this event, that he would not go to jail unless, like I usually explain to everybody, unless I get inside and find dead bodies or something like that, then, you know,

he would be - - charges would be filed and he would later be arrested on a warrant.

Deputy Whitehead also testified that Clayton was not free to leave during their encounter, and that no attempt was ever made to secure a search warrant because Clayton consented to the search. For his part, Clayton testified that law enforcement made it seem like he was going to be arrested if he did not consent to the search of his home.

The trial court denied the motion to suppress. The trial court concluded that Clayton's consent was coerced,[*] but found that the inevitable discovery doctrine applied because "law enforcement had the probable cause to procure a search warrant, and were in the process of an active investigation into the existence of a cannabis cultivation operation at [Clayton]'s home." Clayton then pled to the charges, reserving his right to appeal the denial of the motion, which the trial court found was dispositive of the charges. *See* Fla. R. App. P. 9.140(b)(2)(A)(i).

II.

A trial court's ruling on a motion to suppress evidence presents a mixed question of law and fact. *Connor v. State*, 803 So. 2d 598, 608 (Fla. 2001). The trial court's factual findings will be upheld if there is competent substantial evidence to support them. *State v. Young*, 974 So. 2d 601, 608 (Fla. 1st DCA 2008). However, the trial court's application of the law to those facts is reviewed *de novo. Id*.

The Fourth Amendment of the United States Constitution proscribes unreasonable searches and seizures. Florida's State Constitution also protects the rights of individuals against unreasonable searches and seizures and construes the right in conformity with the Fourth Amendment and its interpretation by the United States Supreme Court. Art. I, § 12, Fla. Const.

---

[*] Regarding Clayton's consent, the court wrote: "In effect, [Clayton]'s choices were either (a) consent to the search of his home that evening, or (b) the officers would detain [Clayton] indefinitely while a search warrant for [his] home was secured."

3

Accordingly, warrantless searches or seizures are "per se unreasonable." *Katz v. United States*, 389 U.S. 347, 357 (1967). The warrant requirement ensures that a "'neutral and detached magistrate' [stands] between the citizen and 'the officer engaged in the often competitive enterprise of ferreting out crime.'" *United States v. Karo*, 468 U.S. 705, 717 (1984) (quoting *Johnson v. United States*, 333 U.S. 10, 14 (1948)). Evidence obtained through an unlawful search or seizure is inadmissible. *Tims v. State*, 204 So. 3d 536, 538 (Fla. 1st DCA 2016) (citing *Herring v. United States*, 555 U.S. 135, 139 (2009)).

One of the recognized exceptions to the exclusionary rule is the inevitable discovery doctrine. The doctrine was adopted by the United States Supreme Court in *Nix v. Williams*, 467 U.S. 431 (1984), and has long been recognized by Florida courts. *Fitzpatrick v. State*, 900 So. 2d 495 (Fla. 2005); *Moody v. State*, 842 So. 2d 754, 759 (Fla. 2003); *Craig v. State*, 510 So. 2d 857 (Fla. 1987). Under the inevitable discovery doctrine, "evidence obtained as the result of unconstitutional police procedure may still be admissible provided the evidence would ultimately have been discovered by legal means." *Maulden v. State*, 617 So. 2d 298, 301 (Fla. 1993).

This Court addressed the applicability of the inevitable discovery doctrine in *McDonnell v. State*, 981 So. 2d 585 (Fla. 1st DCA 2008). In *McDonnell*, police went to the defendant's home while investigating a theft. 981 So. 2d at 587. Initially, the defendant refused to consent to a search of his home. *Id*. As a result, one officer left the scene to obtain a warrant. *Id*. While waiting for the officer to return, the defendant consented to the search after another officer asked, which led to the discovery of incriminating evidence. *Id*. at 588. While finding that the defendant's consent was coerced, the trial court ruled the evidence admissible because the evidence would have been discovered inevitably. *Id*. at 589.

On appeal, this Court affirmed. *Id*. at 593. We found that police were actively in the process of securing a search warrant when the warrantless search occurred. *Id*. While we held that "the inevitable discovery doctrine will not be applied in every case where the police had probable cause for a search warrant, but

4

failed to get one," the focus is on "whether the police made an effort to get a warrant *prior* to the illegal search and whether strong probable cause existed for the search warrant." *Id.* (emphasis added).

In contrast, the police in *King v. State*, 79 So. 3d 236 (Fla. 1st DCA 2012), did not attempt to secure a warrant before the defendant's home was searched. *King* involved an investigation into a domestic disturbance where the defendant's wife led law enforcement into the home and directed them to defendant's firearm. *Id.* at 237. The trial court denied suppression of the firearm because police would have inevitably discovered it. *Id.* We reversed, rejecting the application of the inevitable discovery doctrine and reaffirming that law enforcement must take affirmative steps to secure a warrant in order for the doctrine to apply. *Id.* at 238. *See also Rodriguez v. State*, 187 So. 3d 841, 848, 849-50 (Fla. 2015) (holding that "the inevitable discovery doctrine does not apply when the prosecution cannot demonstrate an active and independent investigation," that the state must show "that a search warrant [is] being actively pursued prior to the occurrence of the illegal conduct" in order to use the inevitable discovery doctrine, and that the doctrine "cannot function to apply simply when police could have obtained a search warrant if they had taken the opportunity to pursue one.").

## III.

In this context, inevitable discovery supports admission of illegally obtained evidence only when police actively sought to obtain a search warrant before searching a home. Based on that analysis, the trial court erred in denying Clayton's motion to suppress. We reject the State's attempt to distinguish this case from *Rodriguez*.

The State argues that the inevitable discovery doctrine permits admission here because police were engaged in an "active investigation" at the time of the illegal police conduct. In fact, *Rodriguez* holds that the inevitable discovery doctrine does not permit admission of illegally-seized evidence just because officers were conducting an "active investigation" at the time of the illegality, even when they have already developed probable cause for a search warrant at the time of the improper conduct. Instead,

*Rodriguez* holds that the inevitable discovery doctrine permits admission of illegally-seized evidence only when the police misconduct occurs when "the police were in the process of obtaining a warrant prior to the misconduct." *Id.* at 849. Any other result would allow the exception to swallow the rule. If the inevitable discovery doctrine were applied this way, any time police have probable cause to search a home, they could do so without seeking a search warrant and the State would be permitted to introduce evidence seized in such a search by asserting that the evidence would have been discovered inevitably. Such a rule would eviscerate the warrant requirement.

Here, officers made no attempt to obtain a search warrant because Clayton consented to the search of his home. The trial court concluded that the officers "appeared to have ample opportunity to procure a search warrant prior to executing the search of [Clayton]'s home." The fact that officers *could* have obtained a search warrant does not permit admission of improperly seized evidence under the inevitable discovery doctrine.

Police who have probable cause to search a home are placed in a difficult position. They can take the time and attendant risk to secure a search warrant, or they can ask the homeowner for consent to search, "with the threat of suppression if they guess wrong," *Davis v. United States*, 512 U.S. 452, 461 (1994), by asking for consent the wrong way. Either way, the police had probable cause to search, but will suffer suppression if they choose consent but secure it improperly. Nonetheless, the result here is necessary if we are to maintain a system where we prefer searches pursuant to warrant. *See United States v. Ventresca*, 380 U.S. 102, 106 (1965) (holding that the United States Supreme Court "strongly support[s] the preference to be accorded searches under a warrant").

IV.

The trial court ruled that Clayton's consent to search his home was coerced. Because the inevitable discovery doctrine is inapplicable, the warrantless search of Clayton's home violated his Fourth Amendment right against unreasonable searches.

Since the State conceded that the suppression motion was dispositive to this case, we reverse Clayton's convictions and vacate his sentences.

REVERSED and VACATED.

B.L. THOMAS, C.J., concurs with opinion; MAKAR, J., concurs with opinion.

---

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

---

B.L. THOMAS, C.J., concurring.

I concur with the opinion of Judge Winokur. I write to note that intermediate courts are not "juries" which evaluate the correctness of the decisions of the Florida Supreme Court; there are only inferior courts, which are bound by law to follow the majority decisions of the higher court, although such inferior courts may urge the Florida Supreme Court to reconsider its decisions. *Hoffman v. Jones*, 280 So. 2d 431, 434 (Fla. 1973). The applicable binding precedent in this case is *Rodriguez v. State,* 187 So. 3d 841, 848, 849-50 (Fla. 2015). The majority in *Rodriguez* approved of Judge Hawkes' dissenting rationale in *McDonnell v. State*, 981 So. 2d 585, 593 (Fla. 1st DCA 2005) (Hawkes, J., dissenting), regarding the inevitable-discovery exception to the warrant requirement. Here, the law enforcement officers possessed probable cause that would have supported the issuance of a search warrant of Appellant's home, had one been requested, based on the review of the use of the power consumption in the home which corroborated the anonymous complaint. But because the officers were not in the process of obtaining a search warrant, the evidence must be suppressed under *Rodriguez*.

7

MAKAR, J., concurring with opinion.

Police officers—who obtained coerced consent from Michael Clayton to enter his home where they found marijuana growing—made no attempt to get a search warrant, negating the application of Florida's inevitable discovery rule. *Rodriguez v. State*, 187 So. 3d 841, 849 (Fla. 2015) ("We conclude that permitting warrantless searches without the prosecution demonstrating that the police were in pursuit of a warrant is not a proper application of the inevitable discovery rule."). The Florida rule lies in one tail of a distribution of state and federal court decisions reflecting wide-ranging jurisprudential camps including: (a) those that admit illegally obtained evidence where a search warrant was theoretically obtainable but not pursued; (b) those that bar such evidence because no search warrant was sought; and (c) those that focus on the extent to which an ongoing lawful search would have led to the evidence with or without a search warrant.[1]

*Rodriguez*'s bright-line rule—requiring proof that pursuit of a search warrant was ongoing at the time of the illegal police conduct—was established by a 4-3 vote, the dissenters advocating a more nuanced approach, pointing to *Nix v. Williams*, 467 U.S. 431 (1984). In *Nix*, the inevitable discovery exception to the exclusionary rule was adopted,[2] requiring only that the

---

[1] *See generally* Martin J. McMahon, *What circumstances fall within "inevitable discovery" exception to rule precluding admission, in criminal case, of evidence obtained in violation of federal constitution*, 81 A.L.R. Fed. 331 (1987 and Supp. 2018) (citing cases from state and federal jurisdictions). The Eleventh Circuit, which includes Florida, falls into this latter category. *Jefferson v. Fountain*, 382 F.3d 1286, 1296 (11th Cir. 2004) ("In order for evidence to qualify for admission under this exception to the exclusionary rule, there must be a reasonable probability that the evidence in question would have been discovered by lawful means, and the prosecution must demonstrate that the lawful means which made discovery inevitable were being actively pursued prior to the occurrence of the illegal conduct.").

[2] It wasn't a big leap because "[e]very Federal Court of Appeals having jurisdiction over criminal matters, including the

8

prosecution "establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means" to avoid exclusion. *Id.* at 444. This more flexible standard was applied in *Craig v. State*, 510 So. 2d 857, 863 (Fla. 1987), which upheld the admission of wrongfully-obtained evidence because it "would have been found independently even without the statements, by means of normal investigative measures that inevitably would have been set in motion as a matter of routine police procedure."

Neither *Nix* nor *Craig* involved the issue of whether a search warrant of a home was in the works at the time of the unlawful police conduct, distinguishing them from *Rodriguez*, which is not alone in adopting a bright-line rule in this context, *see* McMahon, *supra*, note 1, one that makes sense by discouraging actions that bypass the Constitution's prohibition against unreasonable searches of homes and the requirement of a warrant based on probable cause, as Judge Winokur thoroughly explains. Why bother with a search warrant in non-exigent circumstances if evidence from a warrantless intrusion can be validated after-the-fact by showing that, hypothetically, a search warrant might have been sought and obtained eventually?

That said, *Rodriguez* broke new ground, and the jury is still out on whether the balance its bright-line rule struck is the most sensible one in light of the purpose of the exclusionary rule (as Justice Canady's dissent in *Rodriguez* explained in detail). On one hand, the rule in *Rodriguez* fosters an incentive (perhaps even an over-incentive) to invest in standard police procedures to procure search warrants prior to or contemporaneously with ongoing investigations involving no exigencies thereby hewing more closely to constitutional norms regarding searches of homes; on the other hand, the rule in *Rodriguez* may prove to be costly by suppressing evidence that would be discovered by "normal investigative measures" and "routine police procedures" other than a search warrant. In this case, the investigation of Clayton consisted of only an anonymous source and high residential

Eighth Circuit in a case decided after the instant case, has endorsed the inevitable discovery doctrine." 467 U.S. at 441.

power bills, which courts that have addressed the issue[3] have deemed inadequate for search warrants of homes, making at least some modicum of additional investigative work necessary to support a warrant under *Rodriguez*. Even under *Nix* and *Craig* the record here doesn't show that the marijuana would have inevitably been discovered by normal or routine investigative procedures. All in all, reversal of Clayton's conviction on the dispositive issue of the inapplicability of the inevitable discovery rule is proper by any standard.

_____

Andy Thomas, Public Defender, and Laurel Cornell Niles, Assistant Public Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, and Daniel R. Krumbholz, Assistant Attorney General, Tallahassee, for Appellee.

---

[3] *United States v. Clark*, 31 F.3d 831, 835 (9th Cir. 1994); *Carter v. State*, 910 P.2d 619, 625-26 (Alaska Ct. App. 1996); *State v. Benters*, 367 N.C. 660, 673 (2014); *State v. Young*, 123 Wash. 2d 173, 196 (1994); *State v. McPherson*, 698 P.2d 563 (Wash. Ct. App. 1985).